In the Matter of GEORGE W. NASH (Admitted as GEORGE WINSTON NASH), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, April 30, 1991

### APPEARANCES OF COUNSEL

*Polly M. Puner* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*Allan J. Berlowitz* of counsel *(Delamater & Berlowitz,* attorney), for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent was admitted to the practice of law in New

York by the Fourth Judicial Department on April 3, 1968 under the name of George Winston Nash. At all times relevant herein, respondent maintained an office for the practice of law within the First Judicial Department.

On May 17, 1989, respondent was served with a notice and statement of charges alleging that he had engaged in professional misconduct during the course of his representation of Aurica Foca-Rodi in connection with her divorce from her husband George Foca-Rodi. Specifically, respondent was charged with violating DR 1-102 (A) (4), (5) and (6) of the Code of Professional Responsibility for allegedly preparing a separation agreement in which he allowed his client's husband to state falsely that his address was that of respondent, which was in New York, when, in fact, respondent knew that his client and her husband lived in New Jersey; back-dating the agreement by one year and then falsely notarizing the parties' signatures in order fraudulently to provide the parties with the appearance of valid statutory grounds for divorce in New York; preparing additional papers required for securing a New York uncontested divorce, i.e., the summons, verified complaint, the parties' affidavits, and notarizing his client's false verification and the parties' false affidavits; and submitting these documents to the New York State Supreme Court which granted an uncontested divorce based upon the fraudulent documents respondent had prepared. It was also alleged that the same conduct violated DR 1-102 (A) (4), (5) and (6) in that respondent's actions were prejudicial to the administration of justice and reflected adversely on respondent's fitness to practice law.

Respondent's answer admitted some of the charges while denying others and requested the Hearing Panel to consider evidence in mitigation. At the hearing conducted on September 27, 1989 and November 15, 1989, respondent conceded the charges against him. In mitigation, respondent requested the Panel to consider that he was a native of Romania and that the charges relating to the Foca-Rodi divorce constituted an isolated incident in an otherwise unmarred 21 years of practice.

Respondent's conduct came to the attention of the DDC as a result of Mr. Foca-Rodi's attempt to upset the terms of the divorce. Two years after the divorce was filed, Mr. Foca-Rodi stopped paying maintenance, refused to transfer the marital residence to Mrs. Foca-Rodi and tried to vacate the divorce decree. Mrs. Foca-Rodi, represented by another attorney, then

commenced litigation to enforce the separation agreement and divorce decree. Mr. Foca-Rodi, however, then threatened respondent by telling him to pay him $20,000 or $30,000, which he would then pay to his wife, or else he would complain to the Departmental Disciplinary Committee (DDC) about respondent's conduct in obtaining the divorce decree. Respondent refused to pay Mr. Foca-Rodi.

Respondent informed the Panel that he committed the acts charged because both Mr. and Mrs. Foca-Rodi wanted an immediate divorce. The couple wanted the divorce to proceed quietly so as to avoid a scandal in their community. Respondent also stated that he agreed to expedite the process because he feared for his client's emotional and physical well-being since her husband had violent tendencies. Respondent received no fee from his client or her husband for the services rendered.

Respondent also stated that approximately one third of his practice was devoted to indigent foreigners and that he often represented them without charge. Respondent also presented testimony from several clients who expressed their satisfaction with his representation and who confirmed that he was willing to help clients without charging a fee. Respondent added that he had cooperated fully with the investigation into this matter.

At the conclusion of the hearing, staff counsel recommended that respondent be suspended from the practice of law for a period of one year. On October 10, 1990, the Hearing Panel issued its report sustaining all of the charges against respondent. However, the Hearing Panel, with one dissent, recommended the sanction of public censure.

By notice of petition dated November 16, 1990, the DDC seeks an order confirming the findings of the Hearing Panel and imposing whatever disciplinary measure the court deems appropriate.

The evidence presented to the Hearing Panel, including respondent's own admissions, supports the Panel's findings and conclusion that respondent is guilty of professional misconduct. However, we find that the serious nature of respondent's misconduct involving the commission of a fraud upon the court warrants a term of suspension (*Matter of Halper,* 141 AD2d 201; *Matter of Newman,* 64 AD2d 145; *Matter of Baily,* 48 AD2d 411). The court has considered respondent's extensive *pro bono* work, his otherwise unblemished record,

and the fact that his actions were motivated by a desire to help his client, and not for any personal financial gain as mitigating factors.

Accordingly, the petition of the DDC to confirm the Hearing Panel's report is granted to the extent of confirming the Panel's findings of fact and conclusions with respect to the charges. However, the Panel's recommended sanction of public censure is disaffirmed and respondent is suspended from the practice of law for a period of one year, commencing 30 days after the date of this order.

ROSENBERGER, J. P., ASCH, KASSAL, SMITH and RUBIN, JJ., concur.

Petition granted only insofar as to confirm the Hearing Panel's findings of fact and conclusions of law with respect to the charges; the recommended sanction of public censure is disaffirmed and respondent is suspended from the practice of law for a period of one year, commencing May 30, 1991, and until the further order of this court, as indicated.