[811 NYS2d 38]

In the Matter of Anthony J. Fauci and Christopher J. Fauci (Admitted as Christopher Joseph Fauci), Attorneys, Respondents. Departmental Disciplinary Committee for the First Judicial Department, Petitioner.

First Department, March 14, 2006

## APPEARANCES OF COUNSEL

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee,* New York City (*James T. Shed* of counsel), for petitioner.

*Benjamin Brotman & Associates, P.C.* (*Howard Benjamin* of counsel), for respondents.

## OPINION OF THE COURT

Per Curiam.

Respondent Anthony J. Fauci was admitted to the practice of law in the State of New York by the First Judicial Department on November 1, 1999, and his brother Christopher Joseph Fauci was admitted to the practice of law in the First Judicial Department on February 3, 1997. At all times pertinent to this proceeding, respondents together maintained an office for the practice of law within the First Judicial Department.

Respondents were preceded into practice by their father, James R. Fauci, who maintained a law office under the professional name James R. Fauci, Associates, in Manhattan until his sudden death in May 1995. In 1992, James Fauci established an IOLA account on which he allowed respondent Anthony to be a signatory even though Anthony was not admitted to practice until 1999. Prior to his death, Mr. Fauci would take Anthony with him to court on numerous occasions, and on at least two occasions had Anthony, who was not yet admitted, attend conferences without him. Subsequent to Mr. Fauci's death, matters which were pending in his office were handled by his associate Sam Racer, Esq. Prior to Anthony's admission, and at Racer's and later his brother Christopher's insistence, Anthony signed numerous IOLA checks to disburse funds to clients.

The Departmental Disciplinary Committee for the First Judicial Department initiated an investigation against both respondents as a result of complaints filed by two of their father's clients and one client of Christopher's. As a result, a

notice and statement of 36 charges were served on respondents on July 9, 2003. Respondents submitted an answer denying each of the counts. Thereafter, the Committee moved for leave to serve supplemental charges against Anthony based on his failure to respond to the Committee's request to answer a new disciplinary complaint.

The parties entered into a prehearing stipulation of facts, and five days of hearings were held before a referee, at which respondents testified.

The referee sustained seven counts as to Anthony covering his false notarization of his own bar application and repeated false testimony thereon (counts 13-17), holding himself out as an attorney and engaging in the unlawful practice of law prior to his bar admission by attending court conferences on behalf of a client and signing a "so ordered" stipulation on her behalf (count 33), and escrow violations (count 1). The referee also sustained the supplemental charges relating to Anthony's failure to answer the new disciplinary complaint.

As to Christopher, the referee sustained four counts regarding his repeated false testimony concerning the notarization of Anthony's bar application (counts 18-19), the neglect of one client matter (count 36), and permitting a nonlawyer under his supervision (Anthony) to sign checks on an IOLA account (count 5).

The referee held a sanction hearing at which respondents did not testify, but offered testimony on their behalf. Respondents argued that they were being held accountable for their father's actions. They maintained that their relationship with their father and his sudden death had a bearing on the charges alleged. Respondents sought a private reprimand, or, in the event public discipline was warranted, public censures. The Committee requested a three-year suspension for Anthony and no less than an 18-month suspension for Christopher. However, the referee recommended Anthony be suspended for two years and Christopher for one year.

A Hearing Panel sustained all but two charges which had been sustained by the referee. Although the referee sustained counts 1 and 5, relating to Anthony's signing of IOLA checks prior to his admission to practice, the Hearing Panel concluded that the Disciplinary Rules did not apply to nonlawyers, and, therefore, did not sustain count 1 as to Anthony and count 5 as to Christopher. The Hearing Panel also sustained one additional charge as to Christopher (count 26—involving his notarization

of a client's signature when she was not present). Despite the differences in the charges sustained, the Hearing Panel nonetheless concurred in the sanction recommendations on the ground that respondents' false testimony alone regarding the forged notarization on Anthony's bar application warranted the referee's recommended suspensions.

The Committee now seeks an order pursuant to 22 NYCRR 603.4 (d) and 605.15 (e) (2) confirming the determination of the Hearing Panel recommending a two-year suspension for Anthony and a one-year suspension for Christopher.

Respondents filed a cross motion which on its face limits the relief sought to disaffirming the Hearing Panel's report only as to sanction and requesting respective public censures instead. Most of the papers in support of the cross motion offer mitigation of the alleged misconduct. However, counsel maintains that, notwithstanding that no affirmative request to disaffirm factual findings was made in the cross motion, "most of the counts sustained should be dismissed."[1]

We confirm the findings of fact of the Hearing Panel as they are fully supported by the record. To the extent respondents' cross motion can be construed as one to disaffirm certain of those findings, it is denied.

With respect to Anthony's application for admission to the bar, the Committee retained a handwriting expert who testified that after examining 12 known signatures of Christopher, and comparing them to the signature on the notarial jurat on Anthony's bar application, and after examining the known signature of Anthony, it was Anthony who had affixed Christopher's signature to his affidavit for admission to the bar. Accordingly, respondent violated DR 1-101 (a) (made a materially false statement in connection with application for admission to the bar) and DR 1-102 (a) (4) (engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation) and (5) (engaged in conduct prejudicial to the administration of justice) (22 NYCRR 1200.2, 1200.3) and counts 13-15 were properly sustained against Anthony. In addition, by testifying before the Committee that he did not affix the notary signature when in fact he

---

1. In the affirmation in support of the cross motion to disaffirm the Hearing Panel's recommended sanction, counsel specifically argues that counts 13, 14, 15, 16, 26, 33 and the supplemental charges should be dismissed.

did, Anthony violated DR 1-102 (a) (4) and (5) and counts 16 and 17 were properly sustained against him.[2]

In 1984, a client retained respondents' father, James Fauci, to prosecute a medical malpractice action. In the course of the litigation, Anthony appeared at two court conferences, one on October 8, 1992 and the other on May 5, 1994, and signed a "so ordered" stipulation on her behalf before he was admitted to practice law. Anthony testified before the referee that it did not look like his signature as "Attorney for Plaintiff" on the "so ordered" stipulation, and he did not recall attending these conferences.

However, the Committee's handwriting expert testified that it was indeed Anthony's signature on the stipulation. The Committee also presented two witnesses who testified that Anthony had attended that conference. Thus, the record fully supports the finding that Anthony held himself out as an attorney in violation of DR 1-102 (a) (3), and, therefore, count 33 was properly sustained.

On November 15, 1996, Justice Sklar struck this medical malpractice action from the trial calendar, but it remained on the court's individual calendar. The Fauci office was notified that the case had been stricken from the calendar. Several months later, the client learned of James' death and tried to contact the firm. However, she received no response. Consequently, she filed a disciplinary complaint against Anthony, which was sent to Christopher, now an attorney.

On September 3, 1997, Christopher responded to the complaint acknowledging that the Fauci firm had failed to properly maintain contact with the client and further advised that the case was currently active. However, at that time, Christopher was aware that the note of issue had been vacated, the action had been stricken from the trial calendar, and that he had only one year in which to move to have it restored. On April 1, 1998, in response to another inquiry about the status of the case, Christopher wrote to the Committee that the case "was timely commenced and is currently pending" before Justice Sklar. At no time did Christopher make an application to restore the case to the calendar and by April 1, 1998, the time to do so had expired. Sometime in July 1999, a motion was made to dismiss the complaint. Although Christopher submitted an affirmation in opposition, his failure to submit a doctor's af-

---

2. Anthony does not challenge the finding with respect to count 17.

fidavit of merit led to dismissal of the complaint. Accordingly, respondent clearly neglected a legal matter entrusted to him in violation of DR 6-101 (a) (3) (22 NYCRR 1200.30) and count 36 was properly sustained.

Count 26 charged Christopher with violating DR 1-102 (a) (4) for notarizing signatures on medical authorizations on dates when his client did not sign the forms in his presence. The referee characterized this as merely "slipshod practice" and concluded that respondent did not engage in deceitful conduct in violation of DR 1-102 (a) (4). The Hearing Panel disagreed, finding that count 26 should have been sustained under Executive Law § 135-a (2).[3] Indeed, there is no doubt that respondent engaged in misconduct (*see Matter of Facey v Department of State*, 132 AD2d 698 [1987], *lv denied* 70 NY2d 611 [1987]), and we, therefore, agree with the Hearing Panel's determination to sustain count 26.

The supplemental charges were also properly sustained. The record indicates that the Committee sent Anthony five letters requesting an answer to a new matter, and he failed to answer. The fourth request also advised Anthony that his further failure to respond would result in a motion to add charges for failure to cooperate. Anthony, through his attorney, opposed the addition of new charges on the ground that this and other matters including the hearings in this proceeding, caused the delay in responding. We agree with the referee that this response was inadequate. Therefore, the supplemental charges were properly sustained.

Turning to the issue of an appropriate sanction, we find that respondents' respective conduct warrants suspension, and not public censure as they urge. Moreover, the recommended sanctions are too lenient given the seriousness and totality of respondents' misconduct.

With regard to Anthony's unlawful practice of law, while most cases arise in the context of admitted attorneys who were disbarred for practicing law while suspended (*see e.g. Matter of Gill*, 3 AD3d 109 [2004]), Anthony's preadmission practice of law regarding one of the firm's client's is nevertheless a serious matter, and his further misconduct, in any event, warrants suspension.

---

**3.** That section provides: "A notary public or commissioner of deeds, who in the exercise of the powers, or in the performance of the duties of such office shall practice any fraud or deceit, the punishment for which is not otherwise provided for by this act, shall be guilty of a misdemeanor."

While Anthony's preadmission misconduct regarding his bar application did not involve a client, he nevertheless acted fraudulently by notarizing his own bar application. This misconduct was clearly aggravated by his repeated false testimony in that regard (*see Matter of Glotzer*, 191 AD2d 112 [1993]; *Matter of Harris*, 139 AD2d 253 [1988]).

Anthony's failure to answer a new disciplinary complaint was prejudicial to the administration of justice and adversely reflected on his fitness as a lawyer (*see e.g. Matter of Stewart*, 250 AD2d 217 [1998]). Indeed, failure to cooperate with the Committee warrants immediate suspension from the practice of law (*see Matter of Lee*, 14 AD3d 98 [2004]; *Matter of Zukowski*, 225 AD2d 1 [1996]).

Christopher's misconduct, in addition to his false testimony involving his brother's bar application, included neglecting a client matter and notarizing a client's medical authorizations when the client was not present. Such misconduct warrants suspension (*see Matter of Danas*, 236 AD2d 44 [1997]). We have had occasion to observe that in cases where neglect is combined with misrepresentation of the status of a case to the client or lack of candor before the Committee, the suspension term is generally longer than one year (*see Matter of Siegel*, 193 AD2d 181, 185 [1993]). Here, Christopher neglected the matter, failed to respond to the client's inquiry about its status, misrepresented its status to the Committee and was ultimately responsible for its dismissal. Accordingly, a higher sanction should be imposed (*see Matter of LeBow*, 285 AD2d 28, 33-34 [2001]).

Although respondents do not have disciplinary records, they have not shown remorse nor have they taken responsibility for their misconduct (*see Matter of Edelman*, 212 AD2d 126 [1995]). While respondents blame their father for their actions, we observe that the most serious misconduct occurred after their father had died. We reject respondents' attempts to shift the blame and minimize their misconduct. Indeed, we consider such utter lack of acknowledgment of wrongdoing and lack of remorse aggravating factors which militate against imposing the lesser recommended sanctions (*see Matter of Weinstein*, 4 AD3d 29 [2004], *lv denied* 3 NY3d 608 [2004]). In any event, regardless of the father's role, the misconduct at issue here calls into serious question respondents' character as lawyers, which is a requisite for membership to the bar. We also observe that respondents failed to submit evidence of any participation in community, professional, or pro bono services.

Accordingly, the Committee's petition should be granted to the extent of confirming so much of the determination of the Hearing Panel with respect to the issues of the professional misconduct of the respective respondents and disaffirming so much thereof with respect to the Hearing Panel's recommendation that this Court impose a two-year suspension upon Anthony J. Fauci and a one-year suspension upon Christopher J. Fauci; respondent Anthony J. Fauci should be suspended for a period of three years and respondent Christopher J. Fauci should be suspended for a period of 18 months. The cross motion should be denied.

BUCKLEY, P.J., TOM, FRIEDMAN, MARLOW and WILLIAMS, JJ., concur.

Respondent Anthony J. Fauci suspended from the practice of law in the State of New York for a period of three years, effective April 13, 2006 and until further order of the Court.

Respondent Christopher J. Fauci suspended from the practice of law in the State of New York for a period of 18 months, effective April 13, 2006 and until further order of the Court.