[831 NYS2d 141]

In the Matter of ELIZABETH COHEN, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, March 1, 2007

**APPEARANCES OF COUNSEL**

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee,* New York City (*James T. Shed* of counsel), for petitioner.

*Richard M. Maltz, PLLC,* for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent Elizabeth Cohen was admitted to the practice of law in the State of New York by the Second Judicial Department on June 12, 1991. At all times relevant to these proceedings, respondent maintained an office for the practice of law within the First Judicial Department.

On or about October 11, 2005 respondent was served with a notice and statement of charges alleging seven counts of disciplinary violations involving her handling of an immigration matter that included the backdating of a document submitted to two governmental agencies. The disciplinary rules alleged to have been violated were Code of Professional Responsibility DR 1-102 (a) (4) concerning dishonesty, fraud, deceit or misrepresentation, (5) alleging conduct prejudicial to the administration of justice, (7) concerning respondent's fitness to practice law and DR 6-101 (a) (3) neglect of a client's matter (22 NYCRR 1200.3, 1200.30).

In her answer and throughout these proceedings, respondent denied that she backdated the document in question, despite clear evidence to the contrary.

The Committee seeks an order, pursuant to 22 NYCRR 603.4 (d) and 605.15 (e), confirming the findings of fact and conclusions of law set forth in the Hearing Panel's determination and the Referee's report, and imposing whatever sanction we deem appropriate.

At hearings conducted by the Referee the complainant in this matter was Jorge Castillo, a Chilean national who was working in the United States as an architect under a six-year work visa. He retained respondent's firm in 2000 to pursue an application to obtain permanent resident status. At the time, respondent's firm consisted of her father, her two brothers and herself. Initially, Castillo was working with respondent's brother, Michael Leavitt, and signed all the documents necessary to be filed with Immigration and Naturalization Service (INS) and United States Department of Labor to obtain permanent resident status.

In March 2002, we suspended Leavitt from the practice of law for 18 months on charges unrelated to the Castillo matter. At that point, Castillo's case file could not be located within either

governmental agency but respondent advised him she was taking over the matter and was attempting to locate the file.

In July or August 2002, Castillo's employer filed a petition with the INS to further extend his work visa which was to expire in 2002. On December 5, 2002, Castillo's employer was notified by the INS that in order for a "seventh-year" extension request to be granted, evidence must be submitted that an extension packet had been filed at least 365 days prior to the end of his sixth-year visa stay. During this time, respondent was trying to locate Castillo's file with the two governmental agencies with no success.

In the summer or fall of 2002, respondent suggested to Castillo that a new packet be prepared in the event the first one could not be located. On December 16, 2002, Castillo went to respondent's office where a second packet was prepared and executed. During the December 16 meeting with Castillo, respondent took the second packet and using white out, created another complete packet which was backdated to January/ February 2001. This backdated packet, which respondent sent to the INS, suggested falsely that it was a copy of the packet actually filed in early 2001. Simultaneously, respondent sent a copy of the backdated packet along with the second packet to the United States Department of Labor. Cover letters written to both agencies were intended to mislead them into believing that the backdated packet had been timely filed.

Castillo advised the Committee that during the December 16 meeting at respondent's office, he and his wife saw respondent instructing a secretary, who kept coming into the meeting to make changes to a copy of the new packet, including dates, and to use a certain type of paper, later believed to be the old law firm's letterhead. He stated that at the time, he did not understand what respondent was doing.

In April 2003, the INS notified Castillo's employer that his visa extension was denied, rendering him ineligible to continue working in the United States. The INS cited Castillo's inability to establish that his packet had been timely filed with the United States Department of Labor as a reason for denial of the extension. As a result, he was discharged by his employer.

During the respondent's depositions, the Committee presented her with the altered packet filed with the INS and pointed out the alterations, as well as a number of errors on that packet. Specifically, the cooperative apartment listed as Castillo's address in the backdated packet was not purchased

until a later date and the legal agent was listed as respondent when, in fact, her brother was representing Castillo in 2001. Although she had no explanation for these errors or the alterations, and conceded that the alterations happened while she was the only active partner in the law firm, respondent persisted in denying her participation in the creation of the false document, continuing to place the blame on a secretary despite that secretary's sworn denial of any role in the changes.

The Referee did not sustain count one, finding that respondent could not have intended to deceive Castillo that the packet had not been filed in 2001 when she believed that it had. The Referee sustained the remaining counts, finding inter alia, that the evidence concerning the backdated packet was "overwhelming" and that respondent's false denials of forging the packet violated DR 1-102 (a) (4). Further, respondent's intentional preparation and submission of the backdated packet to the Department of Labor and the INS was found to be prejudicial to the administration of justice in violation of DR 1-102 (a) (5).

The Referee also concluded that respondent violated DR 6-101 (a) (3) by not being diligent enough in ascertaining that her brother had not filed Castillo's packet in 2001. Finally, by engaging in all of the aforesaid conduct, respondent engaged in conduct that adversely reflected on her fitness to practice law in violation of DR 1-102 (a) (7).

In mitigation, the Referee noted that respondent had no prior disciplinary history, had a long record of pro bono activities, her character witnesses were credible in their belief that respondent's actions were aberrational and that she did not seem likely to repeat this type of behavior. The Referee also noted that respondent's remorse "was limited to acceptance of responsibility for what happened on her watch."

After a hearing on sanctions was held, the Referee recommended the imposition of a six-month suspension because of the serious nature of respondent's conduct.

After hearing oral argument, the Hearing Panel recommended confirmation of the Referee's findings as to liability but recommended a one-year suspension. The basis for the recommendation was the Hearing Panel's view that respondent's conduct in altering the documents in question was venal and effectively constituted criminal conduct.

Respondent's deliberate and intentional deception was extremely serious. Although she did not seek to obtain personal

gain from her actions (*see Matter of Kantor*, 241 AD2d 103, 105 [1998], *lv denied* 92 NY2d 813 [1998]), we have repeatedly imposed suspensions of one year or greater where the filing of false documents was involved (*see Matter of Berglas*, 16 AD3d 1 [2005]; *Matter of Nash*, 166 AD2d 84 [1991]). We are particularly disturbed by what the Committee describes as respondent's "pro forma 'responsibility' for what occurred on her watch— without accepting any blame." The record bears out the fact that respondent continuously failed to acknowledge or express remorse for her conduct, attempting to lay the blame for the entire situation on a secretary. Her misconduct was exacerbated when she repeatedly lied about her involvement in the backdating in spite of "overwhelming" evidence that she directed and supervised the alteration and filing of the documents. The lack of acknowledgment of wrongdoing and lack of remorse are certainly aggravating factors which should be taken into account when considering the imposition of an appropriate sanction (*Matter of Fauci*, 28 AD3d 192, 198 [2006]; *Matter of Weinstein*, 4 AD3d 29, 42 [2004], *lv denied* 3 NY3d 608 [2004]).

Accordingly, the Committee's petition should be granted to the extent of confirming so much of the determination of the Hearing Panel with respect to the issues of the professional misconduct of respondent and disaffirming so much thereof with respect to the Hearing Panel's recommendation that this Court impose a one-year suspension; respondent should be suspended for a period of two years and until further order of this Court.

MARLOW, J.P., BUCKLEY, SWEENY, MCGUIRE and MALONE, JJ., concur.

Petitioner suspended from the practice of law in the State of New York for a period of two years, effective March 30, 2007, and until further order of this Court.