In the Matter of THOMAS J. KAVANAGH, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, April 29, 1993

## APPEARANCES OF COUNSEL

*Jeremy S. Garber* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*Thomas J. Kavanagh,* respondent *pro se.*

## OPINION OF THE COURT

Per Curiam.

Respondent Thomas J. Kavanagh was admitted to the prac-

tice of law in New York by the First Judicial Department on February 16, 1948. At all times relevant herein respondent has maintained an office for the practice of law within the First Judicial Department.

Petitioner Departmental Disciplinary Committee seeks an order publicly censuring respondent based on charges that respondent violated DR 1-102 (A) (6) and DR 7-106 (C) (6) of the Code of Professional Responsibility, as it existed prior to the 1990 amendments, by making insulting and unsupported allegations in court papers that his opposing counsel in a breach of contract action had ties to organized crime. In opposition, respondent did not deny making the subject comments but argued that they were justified.

At the hearing on the charges, it emerged that the subject remarks were made in respondent's answering papers to a motion in which his opposing counsel, who represented a construction company, had sought, *inter alia,* sanctions against respondent for making an allegedly frivolous motion. At the time the remarks were made, respondent had only recently been retained in the case and had as yet never met or had any other significant dealings with opposing counsel. Paragraph 5 of respondent's affirmation stated, in part, that the affidavit prepared by opposing counsel: "attempts to frighten defendant's counsel [i.e., respondent] by calling on the court to impose drastic 'sanctions' against him for demanding the defendants be given their constitutional right to a jury trial. Since the construction industry is dominated by the strong arm of the Mafia it occurs to counsel that it is not without the scope of possibility that one of the first words [opposing counsel] learned to lisp at his Godfather's knee might be 'intimidate.' That beats wasting time in arguing facts or law but it depends for success on being able to frighten the intimadee."

Additionally, at the top of an affidavit served by respondent on opposing counsel was found a handwritten note, "Hi Joe— What do you hear from the 'mob'? Chiao! T. Kavanagh."

Respondent's arguments to the Committee focused on the alleged validity of his hypothesis that his opposing counsel may have ties with organized crime. Among the arguments advanced in support of this hypothesis was that opposing counsel represented a Queens construction contractor and that the American press recognizes that "the construction industry is a dues paying vassal that regularly pays a Mafia tax."

Respondent also contended that further evidence of opposing counsel's alleged ties was supplied by the fact that from 1977 to 1980 he had served as an Assistant District Attorney in Queens County under John Santucci, who was described as his "patron." Further evidence was provided by opposing counsel's use of intimidating tactics reminiscent of the Mafia, i.e., a motion for sanctions, as well as opposing counsel's refusal to grant respondent permission to seek FBI files concerning him. As to this final argument, respondent noted that he had been personally informed by FBI agents that "whoever refused to release FBI files probably had something to hide that might require them to 'take the Fifth'."

During the course of the proceedings, respondent sought, unsuccessfully, to be permitted to depose Michael Kavanagh, the District Attorney of Ulster County, regarding the "Mafia infestation in Queens" and the failure to discipline him following his alleged statement that Governor Cuomo had "made his bones" in Queens; attorney Michael Dowd, regarding the "rapport" existing between the Queens County District Attorney's office and Donald Manes; attorney Samuel Dawson, regarding the allegation that he had once stated that "it is not a crime to belong to the Italian Mafia"; and attorney Barry Slotnick, regarding the allegation that he had once stated to a jury that the commission of crime by elected or appointed officials was the "American way." In addition, respondent requested that Panel members reveal to him whether they had ever represented Mafia clients and repeatedly accused the DDC staff of drafting the charges against him in bad faith and with partiality to opposing counsel and his client.

In light of respondent's complete failure to present any rational justification for his remarks attempting to link his opposing counsel to organized crime, we find that the Committee's determinations should be confirmed. First, we find no basis to hold, as argued by respondent, that DR 7-106 (C) (6), which forbids a lawyer from engaging in undignified or discourteous conduct which is degrading to a tribunal, may not apply to remarks made in papers as well as to those in open court. These remarks clearly constituted insulting slurs of the most fundamental sort and were clearly degrading to the court to which they were presented in the guise of proper argument. Moreover, we agree with the Committee that the complete lack of justification for the remarks creates the strong implication that they were motivated in substantial part by an ethnic bias which appears to have interfered with

respondent's judgment sufficiently so as to reflect on his fitness to practice law, thereby justifying its finding that respondent also violated DR 1-102 (A) (6).

Accordingly, the Hearing Panel's report should be confirmed and, as recommended, respondent should be publicly censured.

CARRO, J. P., ROSENBERGER, ELLERIN, WALLACH and ASCH, JJ., concur.

Cross petition seeking to have certain documents in the record denied, the petition granted, the Hearing Panel's report confirmed, and respondent is publicly censured.