[795 NYS2d 209]

In the Matter of DONALD J. GOLDMAN, an Attorney, Respondent.
DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JU-
DICIAL DEPARTMENT, Petitioner.

First Department, May 17, 2005

**APPEARANCES OF COUNSEL**

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary
Committee*, New York City (*Mady J. Edelstein* of counsel), for
petitioner.

*Michael S. Ross* for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent Donald J. Goldman was admitted to the practice of law in the State of New York by the Second Judicial Department on March 30, 1960. He has maintained an office for the practice of law within this Department since 1999.

This disciplinary proceeding does not arise from respondent's conduct of his professional legal practice. Rather, the proceeding arises from respondent's misconduct in connection with a long-running family dispute relating to the estate of his mother, the late Mrs. Byrdie Goldman. Under Mrs. Goldman's will, respondent was the legatee of half the estate, the other half being left in trust to respondent's mentally impaired sister. The will named respondent and Justin Walder, his cousin, as coexecutors, but respondent renounced his executorship, leaving Walder as the sole executor.

The long chain of events culminating in this proceeding began in 1991, when respondent's mother died after suffering a massive stroke. While Mrs. Goldman was hospitalized for the stroke, respondent withdrew $382,504.02 from bank accounts that he and she held jointly. After Mrs. Goldman's death, Walder, as her executor, commenced litigation in New Jersey (the New Jersey proceeding) seeking to compel respondent to turn over the joint-account funds so that they could be administered as part of the estate. In the New Jersey proceeding, respondent gave deposition testimony that was clearly false; for example, respondent testified that he had no knowledge of his mother's assets, financial documents, or the identity of her accountant, although he had filed her 1991 tax return and used the same accountant as she did. In addition, respondent willfully disobeyed orders of the New Jersey court directing him to appear for further depositions, to produce documents, to account for his mother's assets for the $3^{1}/_{2}$ years prior to her death, and to appear in court. As a result of this conduct, in September 1994, the New Jersey court entered a default interlocutory judgment against respondent that directed him to pay into court $382,504.02, the amount he had withdrawn from the joint accounts prior to his mother's death. It appears, however, that the New Jersey court never adjudicated the issue of whether respondent's withdrawal of the joint-account funds had been lawful.

Respondent did not pay money into court as required by the New Jersey interlocutory judgment. Accordingly, Walder com-

menced a proceeding in Supreme Court, New York County, to enter a New York judgment based on the New Jersey judgment. In June 1995, Supreme Court entered such a judgment against respondent. In affirming the 1995 New York judgment, this Court observed: "Given the extensive record developed in the New Jersey proceeding showing deception and evasiveness on [respondent's] part, and that [he] had ample opportunity to advance his claims or defenses in that proceeding, enforcement of the New Jersey judgment was a proper exercise of discretion" (*Estate of Goldman v Goldman*, 224 AD2d 253, 253 [1996], *lv denied* 88 NY2d 811 [1996]).

In February 1996, Walder, as executor, commenced a new action against respondent and his wife in Supreme Court, New York County, seeking to set aside as fraudulent conveyances certain transactions respondent and his wife allegedly had effected for the purpose of defeating enforcement of the 1995 New York judgment. In 2000, after a bench trial, Supreme Court found that certain asset transfers effected by respondent and his wife in 1995 constituted fraudulent conveyances in violation of the Debtor and Creditor Law. The transfers declared fraudulent included respondent's gratuitous transfer of his one-half interest in a condominium to his wife (who subsequently sold the property), and his gratuitous transfer to his wife of funds he had withdrawn from his retirement account, and his gratuitous transfer of a 40% interest in his law practice. Certain of these actions were also found to have violated restraining orders that had been issued against respondent in the prior litigation. In this Court's affirmance of the 2000 judgment based on these findings, we stated that "[a] fair interpretation of the evidence . . . , including [respondent's] admissions, supports the trial court's findings that the challenged transfers from [respondent] to his wife . . . were both presumptively and actually fraudulent as to his creditors" (*Estate of Goldman v Goldman*, 297 AD2d 541, 542 [2002]).

In May 2003, the Departmental Disciplinary Committee petitioned this Court for a determination that the findings concerning respondent's conduct rendered in the above-described New Jersey and New York proceedings establish, pursuant to 22 NYCRR 603.4 (d), Judiciary Law § 90 (2), and the doctrine of collateral estoppel, that respondent is guilty of professional misconduct in violation of various provisions of the Code of Professional Responsibility. The specific provision of the Code of Professional Responsibility the Committee stated that

respondent had violated were DR 1-102 (a) (4) (conduct involving dishonesty, fraud, deceit or misrepresentation), (5) (conduct prejudicial to the administration of justice) and (7) (conduct adversely reflecting on respondent's fitness to practice law), and DR 7-106 (a) (conduct in disregard of a standing rule of a tribunal) (22 NYCRR 1200.3, 1200.37). By unpublished order entered July 25, 2003, this Court granted the Committee's petition, and referred the matter for a hearing to consider evidence in aggravation or mitigation of respondent's guilt, and to recommend an appropriate sanction. After the hearing (the evidence at which is discussed below), the Referee recommended a five-year suspension, and the Hearing Panel recommended a one-year suspension.

The Committee now petitions this Court for an order, pursuant to 22 NYCRR 603.4 (d) and 605.15 (e) (1), imposing an appropriate sanction on respondent for the misconduct we previously held, in our order of July 25, 2003, to be established by the findings rendered in the litigation between respondent and his mother's estate. Although the Committee's papers do not specifically request disbarment, the Committee notes in its memorandum of law that its staff has "consistently recommended disbarment in this case." Respondent, for his part, argues that a six-month suspension would be sufficient.

Having reviewed the evidence in aggravation and mitigation presented at the hearing, and having considered the arguments of the parties and the views of the Referee and the Hearing Panel, we conclude that the appropriate sanction for respondent's misconduct is a one-year suspension from the practice of law. A more substantial sanction than a six-month suspension is clearly required in view of the ethical violations respondent committed by giving false testimony at his deposition in the New Jersey proceedings, flouting court orders to pay money into court and otherwise to cooperate in the New Jersey litigation, and fraudulently conveying his assets for the purpose of defeating enforcement of the judgments against him in two states. On the other hand, substantial mitigating factors are present that, under the circumstances of this somewhat sui generis case, persuade us that neither disbarment nor a five-year suspension (which, given that respondent is past 70, would have the effect of a disbarment) would be appropriate, either.

Aside from his conduct in the family dispute giving rise to this proceeding, respondent's disciplinary record over his more than 40 years of practice (which he spent litigating automobile

casualty cases in the Bronx) is unblemished. Four sitting and two retired Justices of the Twelfth Judicial District, as well as two of his fellow practitioners and two of his principal clients, have testified to his good character and his reputation for honesty and integrity. None of respondent's misconduct involved his work for his clients, and the wrongdoing of which he is guilty appears to be an aberration to which he was driven by the mutual and intense antipathy that existed between himself and his cousin Justin Walder, the executor of his mother's estate. Further, as both the Referee and the Hearing Panel noted, there has never been an adjudication on the merits of the lawfulness of the original act by respondent from which all of his subsequent difficulties followed, i.e., his withdrawal of funds from the joint accounts he held with his mother while his mother was still alive. On their face, the withdrawals from the joint accounts appear to have been at least arguably lawful, and, while this does not excuse respondent's subsequent misconduct, it does lead us to conclude that, contrary to the Committee's contentions, respondent did not commit acts of conversion by withdrawing the joint-account funds. In addition, respondent has expressed contrition for his misconduct, for which he has already paid a high price, in that the New Jersey court has charged him for hundreds of thousands of dollars in legal fees and costs above and beyond his original obligation to pay the $382,504.02 into court. As a result of this escalation of respondent's liability, more than $1 million held for his account by Merrill Lynch has been seized. Finally, while the Committee stresses that respondent's actions were adverse to the interests of his mentally disabled sister, there is no indication that the sister's needs are not being fully met. As the Referee concluded, "[i]t seems that the only beneficiary [of] the Estate was counsel for the Estate and Executor [Walder], Respondent's first cousin, whose fees appeared enormous."

In sum, while respondent's misconduct is serious, in view of its aberrational nature, and its lack of connection to his legal practice, we do not believe that such misconduct is indicative of his likely behavior in other situations. Accordingly, we agree with the Hearing Panel that respondent, notwithstanding his wrongful conduct in the dispute with the executor of his mother's estate, does not pose any danger to his clients, or to the administration of justice, as a practicing attorney. Weighing respondent's misconduct against the evidence in mitigation, including his otherwise unblemished professional record of more

than 40 years, the character evidence in his favor, his contrition, and the heavy price he has already paid for his wrongdoing, we conclude that the sanction of a one-year suspension from the practice of law should be imposed.

Accordingly, respondent should be suspended from the practice of law, pursuant to 22 NYCRR 603.4 (d) and 605.15 (e) (1), for a period of one year, and until further order of this Court.

TOM, J.P., FRIEDMAN, MARLOW, ELLERIN and NARDELLI, JJ., concur.

Respondent suspended from the practice of law in the State of New York, for a period of one year, effective June 17, 2005, and until further order of this Court.