[909 NYS2d 36]

In the Matter of ANTHONY CHIOFALO, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, September 14, 2010

**APPEARANCES OF COUNSEL**

*Alan W. Friedberg, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Mady J. Edelstein* of counsel), for petitioner.

*Michael A. Gentile* for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent Anthony Chiofalo was admitted to the practice of law in the State of New York by the Second Judicial Department on March 16, 1988, and at all times relevant to this matter has maintained an office for the practice of law within this Department.

The Departmental Disciplinary Committee (Committee) moves to confirm the findings of fact and conclusions of law after a hearing that sustained four charges arising out of respondent's use of offensive language and filing of a meritless lawsuit against his wife, her attorneys, and others. Respondent conceded liability as to charges 1 and 2, but contested charges 3 and 4. The Referee sustained all the charges, and recommended a sanction of a one-year suspension from the practice of law. The Hearing Panel agreed with the Referee's findings, but recommended a two-year suspension.

The Committee moves to disaffirm solely to increase the sanction from a two-year suspension to a three-year suspension. Respondent cross-moves to disaffirm to the extent of dismissing charges 3 and 4, and to impose a sanction of public censure or a suspension of no more than six months. For the reasons we state herein, we confirm the Hearing Panel's report and sustain all four charges. However, because we find that a two-year suspension is appropriate in this case, we deny that part of the Committee's motion to increase the sanction from a two-year suspension to a three-year suspension.

Respondent, born in 1961, graduated from Fordham College and Law School, after which he worked at a number of law firms and corporations as in-house counsel. More recently, he has worked as a contract attorney on various projects. In 1990, he married. He has two sons from that marriage. In August 2005, the wife served respondent with divorce papers. During the course of the matrimonial action, respondent pleaded guilty in Bronx Criminal Court to a disorderly conduct violation, based on his contacting his wife and children in disregard of an order of protection. Apparently, the matrimonial action is not yet resolved.

Beginning in February 2006, and in spite of his divorce attorney's advice, respondent sent a series of hostile, obscene, and derogatory written messages to his wife, her successive lawyers,

the children's law guardian, the law clerk for the judge presiding over his matrimonial matter and others. The correspondence was riddled with profanities (primarily of a scatological and sexual nature), as well as ethnic slurs and sexist and homophobic remarks. He also threatened to cut off one attorney's pinkie finger and mail it to his wife. He insulted the judge presiding over the matrimonial case and, without basis, questioned that judge's integrity. He accused opposing counsel of dishonesty and exploitation of the couple's children in order to obtain excessive fees.

In addition, in May 2007, respondent filed a frivolous pro se action in federal court in California, where he was living at the time, against at least 29 defendants, including his wife, her mother, the wife's contemporary and prior attorneys, the judge, three supervising judges, the American Bar Association (ABA) and the brokers who assisted with the sale of the marital home. The action essentially alleged a violation of civil rights under 42 USC § 1983 in connection with his divorce. The federal court dismissed the case.

In June 2008, the Committee served respondent with four charges arising out of respondent's conduct and filing of the lawsuit. In charge 1, the Committee alleged that, by using "obscene, insulting, sexist, anti-Semitic language, ethnic slurs, and threats in correspondence to his wife's attorneys and others," respondent engaged in conduct prejudicial to the administration of justice, in violation of Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]).

Charge 2 alleged that the same conduct adversely reflects upon respondent's fitness as a lawyer, in violation of DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

Charge 3 alleged that, by "filing a meritless federal lawsuit against his former wife, her attorneys, various Judges, and others, merely to harass or maliciously injure another," respondent violated DR 7-102 (a) (1) (22 NYCRR 1200.33 [a] [1]).

Charge 4 alleged that, by filing the meritless action, respondent violated DR 7-102 (a) (2) (22 NYCRR 1200.33 [a] [2]).

In his testimony before the Referee, respondent admitted that his insults were "vile," "disgusting," and "not acceptable . . . for any member of our society, but particularly for a member of the bar"; he intended for them to be offensive and harmful, as well as to demonstrate how "witty" he was. He denied any sexist or racist beliefs, and claimed that he had acted out of pain,

stress over his divorce and financial situation, and an "impaired" psychological state. He asserted that he had been taking medication that made him act "even more strangely," and stated that he had not been able to afford therapy on a regular basis. He testified that he had entertained suicidal thoughts, but never told a doctor because he was ashamed and could not afford treatment. Respondent conceded: "I cannot say I was totally unaware that I was engaging in irrational behavior."

When he initiated the federal action, he was "very confused" and "stressed out," "impaired . . . emotionally." However, he thought "there was enough room in our legal system that [he] could professionally address" issues of parental alienation. He protested that he was a transactional lawyer, not a litigator, although he did research issues of personal jurisdiction and judicial immunity before filing. He claimed that he did not commence the action in California to harass the defendants, but only because he was living there at the time and could not afford to travel to New York. Respondent admitted that he had failed to keep the federal court apprised of his changes of address or to respond to the defendants' motions to dismiss. He stated that he had written to the court to dismiss without prejudice so that he could later file in New York, but never checked the status of that request.

Respondent submitted letters of apology (all penned after the disciplinary proceeding had been commenced) and an apologetic e-mail (written before the charges were filed) that he had sent to some of the victims of his offensive conduct. He also declared his intention to undergo psychiatric treatment. He said he hoped to gain admission to the Texas bar, planned to volunteer with a battered women's shelter and eventually represent noncustodial fathers.

The Referee sustained all four charges and recommended a sanction of a one-year suspension. As noted supra, respondent admitted liability as to the first two counts, relating to his offensive missives. With respect to the second two charges, arising out of the federal action, the Referee determined that there was no objective basis for believing that the lawsuit served any basis other than to harass or injure the defendants by compelling them to appear in a distant jurisdiction. The Referee also noted that respondent's abandonment of the action soon after filing, his failure to respond to the defendants' dismissal motion, and his failure to advise the court of his whereabouts burdened his adversaries and the court, and undermined his claim of good faith.

In light of the pattern of conduct by a mature (in years) attorney, the Referee determined that a sanction more severe than the censure respondent requested was necessary. Under all the circumstances, the Referee recommended a one-year suspension.

A Hearing Panel heard oral argument on April 7, 2009. However, on May 12, 2009, the Hearing Panel reopened the record to receive additional documents from both parties. From the Committee, the Hearing Panel accepted e-mail messages, dated April 7, 8, 14 and 21, 2009, from respondent to the wife's attorney and copied to others. These e-mails, although somewhat toned down, were in a similar vein to respondent's earlier, offensive correspondence in that they included unfounded allegations and sexist remarks.

From respondent, the Hearing Panel accepted five letters from a psychiatrist dated October 22, 2008 to May 7, 2009 and addressed to respondent's counsel. The doctor stated that he had conducted an initial evaluation of respondent on October 8, 2008, and thereafter saw him on a weekly basis, with gaps during the holidays. The doctor was not prescribing any medication. The final letter reported:

> "He does continue to exhibit trends of grandiosity and episodic impulsivity and poor judgment. I continue to see those primarily as personality/adult development deficits rather than indicators of a serious psychiatric illness . . . He continues to regress at times of stress and duress, particularly around financial, legal, and family issues. At these times, his narcissistic defenses come to fore, often to his detriment."

The Hearing Panel also accepted into the reopened record a July 2007 e-mail from respondent to counsel for some of the defendants in the federal action indicating that respondent had requested a transfer of the case or dismissal without prejudice, and a printout of the federal court's docket sheet.

The Hearing Panel accepted the Referee's findings of fact and conclusions of law, and sustained all four charges, but recommended a sanction of two years instead of one. The Hearing Panel noted that respondent's e-mails sent in April 2009, after the Referee issued her report and after the original argument before the Panel, demonstrated that he continues to fail to "comprehend that his actions are inappropriate, insulting, and adversely reflect upon his fitness to practice law."

The Committee moves to confirm the findings of fact and conclusions of law sustaining all four charges, and to disaffirm solely to increase the sanction from a two-year suspension to a three-year suspension. Respondent cross-moves to disaffirm to the extent of dismissing charges 3 and 4 (relating to the federal action) and to impose a sanction of public censure or a suspension of no more than six months.

To the extent respondent has not abandoned his argument that Code of Professional Responsibility DR 7-102 (22 NYCRR 1200.33) (the basis of charges 3 and 4) is inapplicable because it prohibits a lawyer from engaging in certain conduct "[i]n the representation of a client" and he filed the federal action pro se, the provision applies to pro se attorneys, whose clients are themselves (*see Matter of Maroney*, 259 AD2d 206 [1999]).

Charge 3 alleges that respondent's filing of the federal action violated DR 7-102 (a) (1) (22 NYCRR 1200.33 [a] [1]), which states that a lawyer shall not: "File a suit . . . when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure another." Respondent asserts that he did not "merely" intend to harass, but rather wished to bring attention to issues of parental alienation. That argument effectively concedes that he had no expectation of gaining any type of judicial relief, an inference his abandonment of the action confirms. Even if one were to entertain respondent's position that filing actions as a social commentary is acceptable behavior, he offers no excuse for his indiscriminate naming of defendants. For example, he included the brokers on the sale of the marital home, even though he had approved the sale, and has never ventured an explanation as to the ABA. Thus, it is abundantly clear that respondent filed the federal lawsuit merely to harass others.

Charge 4 alleges that respondent's filing of the federal action also violated DR 7-102 (a) (2) (22 NYCRR 1200.33 [a] [2]), which states that a lawyer shall not: "Knowingly advance a claim or defense that is unwarranted under existing law," unless "it can be supported by good faith argument for an extension, modification, or reversal of existing law." Respondent contends that he had a subjective good faith belief that the judicial defendants' actions fell within an exception to the absolute immunity rule. Again, even accepting that assertion, his silence regarding the brokers and ABA is telling.

That the federal court dismissed respondent's action without prejudice and did not sanction him pursuant to Federal Rules of

Civil Procedure rule 11 does not establish his compliance with DR 7-102 (a) (1) and (2) (22 NYCRR 1200.33 [a] [1], [2]). Accordingly, charges 3 and 4 were properly sustained.

Respondent requests a sanction of censure or suspension of no more than six months, even if charges 3 and 4 are sustained. However, cases imposing lighter sanctions involve more limited conduct (*see Matter of Schiff*, 190 AD2d 293 [1993] [censure imposed where obscene and sexist epithets directed at opposing counsel took place during a single deposition]; *Matter of Delio*, 290 AD2d 61 [2001] [comments disrespectful of the court made in short colloquy and affirmation submitted three days later]; *Matter of McDonald*, 241 AD2d 255 [1998] [five vulgar and threatening messages left on answering machine one night when attorney was drunk]; *Matter of Golub*, 190 AD2d 110 [1993] [single, intemperate outburst after a decision in a highly publicized case]; *Matter of Kavanagh*, 189 AD2d 521 [1993] [attorney's insulting slurs against opposing counsel made in a single motion filing]; *Matter of Dinhofer*, 257 AD2d 326 [1999] [in reciprocal proceeding, three-month suspension warranted where accusations of judicial misconduct took place during a single telephone conference based upon a censure in the originating jurisdiction]). Censure was also imposed in *Matter of Hayes* (7 AD3d 108 [2004]), based on the attorney's accusations against the court and its clerk of racism following an unfavorable ruling. Even though the attorney had a prior admonition for similar misconduct (as well as a prior admonition for neglect), this Court apparently treated the incidents as isolated.

For a pattern of offensive language, without any other misconduct, this Court has suspended an attorney for six months for his pattern of vulgar and sexist comments, directed at female attorneys and teenage clients, and spanning more than 10 years (*see Matter of Kahn*, 16 AD3d 7 [2005]; *see also Matter of Mordkofsky*, 232 AD2d 863 [1996], *lv denied* 89 NY2d 817 [1997] [the Third Department suspended for six months an attorney who had made numerous false accusations against judges and opposing counsel]; *Matter of Muller*, 231 AD2d 296, 297-298 [1997] [six-month suspension where the attorney made numerous harassing telephone calls to his former girlfriend over a period of time, and engaged in deceit to obtain information about her and to discredit her with her law school, but conduct was probably due to alcoholism]; *Matter of Simon*, 32 AD2d 362 [1969] [attorney suspended for six months who prepared an affidavit containing scandalous charges, during a dep-

osition in another matter made abusive and obscene statements to opposing counsel, whom he also struck, and had previously been censured for making contumacious comments toward judges]; *Matter of Wisehart*, 281 AD2d 23 [2001], *lv denied* 96 NY2d 935 [2001] [two-year suspension imposed against attorney who made numerous false accusations of bias and incompetence against two judges, and who used wrongfully obtained attorney work product in violation of court order]; *Matter of Raskin*, 217 AD2d 187 [1995] [one-year suspension where the attorney made derogatory and vituperative attacks on an opposing counsel in court documents, and aided a disbarred attorney in the improper practice of law]).

Sanctions for the filing of frivolous actions generally range from censure to a one-year suspension (*see Matter of Belge*, 59 AD2d 497 [1977] [censure where attorney filed action merely to harass and, as administrator for an estate, failed to timely petition for letters of administration or cooperate with the Surrogate's Court and counsel]; *Matter of Gilbert*, 268 AD2d 67 [2000] [in a reciprocal proceeding, attorney was suspended for six months for wrongfully placing a lien on a third person's funds, failing to promptly deliver a third person's funds, and neglecting to notify New York authorities of an earlier New Jersey public reprimand for negligent misappropriation of trust accounts]; *Matter of Bevans*, 225 AD 427 [1929] [suspension for one year where lawyer filed an action and mailed intemperate letters to numerous people, in which he falsely accused two judges and others of conspiracy to commit many crimes]).

That no "client" was injured does not avail respondent, because the individuals he named as defendants were victims of his misconduct. His lack of a prior disciplinary record is not truly a mitigating factor, but more in the nature of an absence of an aggravating factor. While divorce proceedings can most certainly be distressing, particularly when children are involved, they do not excuse long-term spiteful actions.

Respondent does not seriously contend that he was mentally impaired, and he admits that he was not "totally unaware that [he] was engaging in irrational behavior." Respondent did not demonstrate that he has remuneratively more rewarding prospects than his current work, that he himself characterized as paralegal in nature, and thus he failed to establish that suspension will have a ripple effect of impairing his children's well-being. Respondent's remorse, that the Referee and the Hearing Panel found to be genuine, was not deep enough to de-

ter him from engaging in the same hostile (though less profane) conduct during the pendency of the proceedings. Likewise, his return to bad behavior undermines his cooperation with the investigation. His rehabilitation is aspirational only, and even his therapist thought regression is likely. Thus, any mitigation is slight.

Respondent was not charged with contempt of the disciplinary proceeding for his renewed actions during the pendency of the matter, but at the very least, his conduct demonstrated a failure to appreciate the seriousness of his actions (*see Matter of Brecker*, 309 AD2d 77, 79-80 [2003] [attorney suspended for two years based on the attorney's use of "crude, vulgar, and abusive language" in numerous telephone calls and messages over a short period of time, conviction of criminal contempt and a prior admonition]). Moreover, the attorney in *Brecker* did not file a frivolous action, and his abusive and vulgar statements were uttered over a much shorter period. On balance, it is submitted that respondent's actions warrant a similar two-year suspension.

The three-year suspension the Committee requests appears to be unsupported by precedent. For example, in *Matter of Israel* (205 AD2d 101 [1994]), a three-year suspension was imposed on an attorney who made three motions designed solely to harass his client, lied under oath, frustrated a judgment against him, neglected or incompetently handled several client matters, and lacked contrition. It is submitted that respondent's conduct was not as serious as in *Israel*, and therefore three years would be too severe a punishment.

Accordingly the Committee's motion is granted to the extent of confirming the findings of fact and conclusions of law as determined by the Hearing Panel and respondent is suspended from the practice of law for a period of two years, and the cross motion is denied.

MAZZARELLI, J.P., MOSKOWITZ, ACOSTA, FREEDMAN and RICHTER, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of two years, effective October 30, 2010 and until further order of this Court. Cross motion denied.