[943 NYS2d 455]

In the Matter of SANFORD SOLNY, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, April 24, 2012

## APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Ann E. Scherzer* of counsel), for petitioner.

*Scalise and Hamilton, LLP* (*Sarah Jo Hamilton* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent, Sanford Solny, was admitted to the practice of law in the State of New York by the Second Judicial Department on November 17, 1982. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Department.

In 1982, respondent joined the law practice of his uncle, Henry Isaacson, Esq., eventually becoming a partner. In 2001, Lee Snow, Esq. drafted Isaacson's will, which named respondent and Snow as co-executors and divided the estate in equal shares among his four siblings or their surviving issue per stirpes, which would have entitled respondent to an $8^{1}/_{3}\%$ share. Snow also drafted a "Durable Power of Attorney Effective at a Future Time" (the POA) which granted enumerated powers to respondent if Isaacson became incapacitated in the future, to be effective if accompanied by documentation from a physician attesting to Isaacson's incapacity. Isaacson died on March 11, 2007.

In April 2010, the Departmental Disciplinary Committee (the Committee) filed four charges against respondent. Charge one alleges that respondent violated Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) by intentionally misleading Snow as to the reason he needed to obtain the POA from Snow shortly before Isaacson's death. Charge two alleges that respondent violated DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]) (engaging in conduct that adversely reflects on his fitness as a lawyer) by using the POA without the requisite medical certification. Charge three alleges that respondent violated DR 1-102 (a) (7) by misusing the POA to transfer approximately $600,000 of Isaacson's money to himself during the weeks before Isaacson's death. Charge four alleges that respondent committed professional misconduct by failing to maintain his attorney registration in violation of Judiciary Law § 468-a and thereby, Rules of Professional Conduct (22 NYCRR 1200.0) rule 8.4 (d).

In his answer, respondent admitted that he transferred money from Isaacson into his own control, but asserted that he believed that he was authorized to do so by the terms of the POA because Isaacson had given him permission to take the money. Respondent also asserted that the limited information he gave Snow was true, that he had no duty to fully inform Snow of his intended use of the POA, that his failure to supplement the POA with a medical certification was an oversight, and that his brief delinquency in maintaining his attorney registration should be excused.

In November 2010, a Referee, after hearing, issued his findings as to liability in which he sustained all four charges. In February 2011, the Referee, after a sanction hearing, recommended a one-year suspension. In May 2011, a Hearing Panel issued its determination in which it affirmed the Referee's liability finding as to charges one, three and four, reversed as to charge two, and recommended that the proposed suspension be increased to two years.

The Committee now moves for an order, pursuant to 22 NYCRR 605.15 (e) (1), confirming the Hearing Panel's determination insofar as it affirmed the Referee's liability findings sustaining charges one, three and four; disaffirming it insofar as it dismissed charge two; and confirming the Hearing Panel's recommended sanction of a two-year suspension. Respondent asks that this Court dismiss all charges, or, in the alternative, refer the matter back to the Committee for issuance of a private reprimand, or impose no greater sanction than a public censure.

The record shows that in January or February 2007, respondent called Snow and requested a copy of the POA. In February 2007, respondent requested the original POA. When Snow asked respondent why he needed it, respondent said it was to reactivate dormant HSBC bank accounts. On February 23, 2007, Snow sent respondent the POA, along with a cover letter, stating it was only to be used to reactivate the dormant HSBC accounts.

Respondent did not obtain a medical certification attesting to Isaacson's incapacity until March 9, 2007, two days before Isaacson's death. Nevertheless, between February and March 2007, he used the POA to transfer approximately $25,000 from Isaacson's account at Evergreen Bank into an account at Evergreen jointly held by Isaacson and respondent with right of survivorship; approximately $330,000 from three Fidelity accounts in Isaacson's name to a Fidelity account held jointly by Isaacson

and respondent with right of survivorship; and approximately $200,000 from Isaacson's HSBC account into an HSBC account held solely in respondent's name. Respondent also used the POA to transfer all benefits, rights, and privileges of a life insurance policy issued by Standard Security Life Insurance Company of New York and owned by Isaacson to respondent and Isaacson as joint owners with right of survivorship.

Respondent attempted other transfers as well. In February 2007, respondent sent E. Magnus Oppenheim & Co. a copy of the POA and asked that Isaacson's Oppenheim account be changed to an account jointly owned by Isaacson and respondent with a right of survivorship. After discussing the matter with Snow, Oppenheim refused. Respondent made the same request to Neuberger Berman, Inc., which also refused.

After his conversation with Oppenheim, Snow sent respondent a letter informing him that it was improper for him to make transfers under the POA for his own benefit. Snow recommended that if respondent had changed title to any of Isaacson's accounts, he immediately change it back. Respondent did not follow the recommendation.

After Isaacson's death, Snow learned that respondent used the POA to transfer approximately $600,000 to himself or joint accounts with the right of survivorship. In response, Snow successfully moved in the Surrogate's Court to remove respondent as co-executor of Isaacson's estate. Thereafter, respondent, who had initially refused to do so, remitted the funds he had transferred, along with accumulated interest, to Isaacson's estate for distribution under the will.

To justify his conduct, respondent avers that in December 2006, Isaacson expressed his wish to give respondent 20% of his estate in gratitude for the care and attention he had provided, which allegedly had a negative effect on respondent's income. In January 2007, respondent asked Isaacson, who was hospitalized and on a respirator, how the gift was to be accomplished. Isaacson, who could not speak, purportedly held up a yellow legal pad on which the words "you have power of attorney" were written. Respondent did not preserve the note. His nephew, Yisroel Steinberg testified that he witnessed both the December 2006 and January 2007 conversations and corroborated respondent's version of events.

Upon our review of the record, giving due deference to the Referee's finding that respondent and Steinberg were not credible (*see Matter of Weinstein*, 4 AD3d 29, 33 [2004], *lv denied* 3

NY3d 608 [2004]), we confirm the Hearing Panel's determination insofar as it affirmed the Referee's liability findings sustaining charges one, three and four, and disaffirm the determination insofar as it dismissed charge two.

As to charge one, respondent told Snow that he needed the POA to reinstate dormant HSBC accounts, but used it to restructure and to attempt to restructure Isaacson's accounts with multiple financial institutions for his personal benefit. Respondent admitted that he hid his true intent from Snow, and the record supports the Referee's finding that, in violation of DR 1-102 (a) (4), respondent engaged in this conduct involving dishonesty, fraud, deceit, or misrepresentation in furtherance of his plan to make unauthorized transfers to himself. Respondent's argument that he had no duty to disclose his intended action to Snow is unconvincing in light of his affirmative statements, which he used to deliberately mislead Snow.

As to charge two, respondent violated DR 1-102 (a) (7) by ignoring the POA's requirement that he obtain a medical certification that Isaacson was incapacitated before using it. The Referee's credibility finding rejecting respondent's testimony that his failure to obtain medical documentation was an oversight is entitled to deference. The record supports the Referee's finding that respondent intentionally failed to obtain such documentation in January 2007 because "such a request may have gotten back to his uncle's ears."

The Hearing Panel found that Isaacson was incapacitated as of January 2007 and, therefore, respondent's failure to obtain a medical certification was only "negligent." The Panel's finding, however, overlooks the fact that Isaacson's incapacity is not the issue. Rather, respondent was charged with engaging in misconduct by using the POA without first obtaining a medical certification as to Isaacson's incapacity in contravention of the language of the POA.

As to charge three, respondent's misuse of the POA to benefit himself by changing title to Isaacson's accounts was contrary to General Obligations Law § 5-1501 et seq. and the Court of Appeals holding in Matter of Ferrara (7 NY3d 244 [2006]), and, therefore, constituted conduct that adversely reflects on respondent's fitness as a lawyer, in violation of DR 1-102 (a) (7). The Referee's finding that respondent's use of the POA to change ownership of Isaacson's accounts was done without permission is fully supported by the record. As the Hearing Panel found:

"it simply defies reason that . . . Isaacson would have made an oral bequest to Respondent in abrogation of his executed will, and that neither Isaacson nor Respondent, both practicing attorneys, would have notified the co-executor and drafter of the will of this intended change. Nor is it reasonable to conclude that Respondent would have lied to Snow about his reasons for wanting the power of attorney, and surreptitiously seek to transfer as many of the accounts as possible, if Isaacson had truly expressed such an intention."

As to charge four, respondent's failure to keep his attorney registration current and pay the requisite registration fees between April 2008 and April 2010 constituted conduct prejudicial to the administration of justice, in violation of rule 8.4 (*see* Judiciary Law § 468-a [5]). While respondent was not previously suspended for nonpayment of registration fees, his delinquent status (which he brought current at the time of hearing) can still be deemed professional misconduct (*see Matter of Anschell*, 286 AD2d 173 [2001]).

As to the severity of the sanction to be imposed, given the serious nature of respondent's misconduct, his lack of remorse, and the aggravating factors in this case, as balanced against the mitigating factors, we find that a suspension for a period of two years is warranted (*see Matter of Watrous*, 75 AD3d 899 [2010] [respondent, who made restitution, suspended for five years for failing to maintain complete records and account for a portion of his aunt's funds from 1992 until her death in 1995, invading his aunt's assets, engaging in a conflict of interest, and converting estate funds]; *Matter of Cohen*, 40 AD3d 61 [2007] [respondent suspended for two years for falsifying an INS filing by backdating it and failing to acknowledge her misconduct or express remorse]; *Matter of Kuperman*, 285 AD2d 200 [2001] [respondent, who forwarded to an insurance company a durable power of attorney bearing her notary seal purportedly executed by a client who was recently deceased, and who falsely testified before the Grievance Committee that she did not forward the above-mentioned power of attorney, disbarred]; *Matter of Hutchinson*, 171 AD2d 26 [1991] [after considering that all beneficiaries were returned to their status quo ante and that full restitution was made, respondent suspended for two years for violating his fiduciary duties, self-dealing, and overreaching in connection with the estate of his father]).

Here, in furtherance of his plan to change title to Isaacson's accounts for his own benefit, respondent falsely told Snow that he needed the POA to reinstate dormant HSBC accounts. He then misused the POA, without first obtaining a medical certification as to Isaacson's incapacity, to transfer approximately $600,000 of Isaacson's money to himself during the weeks before Isaacson's death. Respondent returned the funds to Isaacson's estate only after he was removed as co-executor by the Surrogate's Court, conceivably to avoid a potential charge of intentional conversion in violation of DR 1-102 (a) (4) that could have subjected him to disbarment (see Matter of Weinstein, 4 AD3d 29, 41 [2004] ["(w)e have consistently held(,) absent unusual mitigating circumstances, . . . (conversion) constitutes serious professional misconduct (that) generally warrants disbarment" (citation omitted)]). Respondent then compounded this misconduct by testifying falsely that he had permission to make the transfers, which gives rise to the inference that he likely suborned false testimony by Steinberg. This aggravating factor is not outweighed by respondent's testimony as to the pressures he was under caring for his uncle, raising four young children and attending to his practice, all while his wife was away for extended periods in Canada caring for her critically ill mother, or by his religious and charitable activities within the Orthodox Jewish community.

Matter of Goldman (20 AD3d 90 [2005]), a collateral estoppel proceeding in which the respondent was suspended for one year based on withdrawal of funds from a joint account with his late mother while she was still alive, and his failure to pay said funds over to a New Jersey court in accordance with its order, does not mandate the imposition of a lesser sanction. In Goldman, the respondent was over 70 years old and had been admitted for more than 40 years with an unblemished record. In imposing a one- year suspension, we noted:

> "there has never been an adjudication on the merits of the lawfulness of the original act by respondent from which all of his subsequent difficulties followed, i.e., his withdrawal of funds from the joint accounts he held with his mother while his mother was still alive. On their face, the withdrawals from the joint accounts appear to have been at least arguably lawful, and, while this does not excuse respondent's subsequent misconduct, it does lead us to conclude that, contrary to the Committee's conten-

tions, respondent did not commit acts of conversion by withdrawing the joint-account funds. In addition, respondent has expressed contrition for his misconduct, for which he has already paid a high price, in that the New Jersey court has charged him for hundreds of thousands of dollars in legal fees and costs above and beyond his original obligation to pay the $382,504.02 into court. As a result of this escalation of respondent's liability, more than $1 million held for his account by Merrill Lynch has been seized." (*Id.* at 94.)

Here, the accounts at issue were in Isaacson's name and respondent misused the POA to transfer them to his name or to joint accounts with the right of survivorship. Respondent is not contrite, and he has not shown that he has already paid a heavy price for his wrongdoing.

Accordingly, the Committee's petition should be granted, the Hearing Panel's determination of liability as to charges one, three and four should be confirmed, the Hearing Panel's determination, to the extent it dismissed charge two should be disaffirmed, and charge two is sustained, and respondent should be suspended from the practice of law for a period of two years, and until further order of this Court.

TOM, J.P., ANDRIAS, ACOSTA, FREEDMAN and RICHTER JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of two years, effective 30 days from the date hereof and until further order of this Court.