[20 NYS3d 50]

In the Matter of Rachel H. Nash, an Attorney, Respondent. Departmental Disciplinary Committee for the First Judicial Department, Petitioner.

First Department, November 19, 2015

**APPEARANCES OF COUNSEL**

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Kevin P. Culley* of counsel), for petitioner.

*Emery Celli Brinckerhoff & Abady LLP (Hal R. Lieberman* of counsel) and *Walden Macht & Haran LLP (Timothy Macht* of counsel), for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent Rachel H. Nash was admitted to the practice of law in the State of New York by the First Judicial Department on February 5, 2001. At all times relevant herein, respondent maintained a registered address for the practice of law within the First Department.

By unpublished order of July 8, 2013, this Court granted the Departmental Disciplinary Committee's petition for an order giving collateral estoppel effect to five judicial decisions; four issued by Supreme Court, Kings County and one issued by the Second Department. This Court found, based on these decisions, that respondent had engaged in misconduct in violation of Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]) (conduct involving dishonesty, fraud, deceit, or misrepresentation), DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]) and rule 8.4 (d) of the Rules of Professional Conduct (22 NYCRR 1200.0) (conduct prejudicial to the administration of justice), DR 7-102 (a) (1) (22 NYCRR 1200.33 [a] [1]) and rule 3.1 (b) (2) (action which serves merely to harass or maliciously injure another), DR 7-102 (a) (2) (22 NYCRR 1200.33 [a] [2]) and rule 3.1 (b) (1) (advance a claim or defense that is unwarranted under existing law), rule 3.1 (a) (frivolous litigation), rule 3.4 (c) (disregard the ruling of a tribunal) and DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]) and rule 8.4 (h) (overall conduct that adversely reflects on fitness as a lawyer), and referred the matter back to the Committee for a hearing before a referee solely to consider evidence in mitigation or aggravation, if any, and to recommend an appropriate sanction.

Thereafter, respondent moved for reargument of this Court's order granting collateral estoppel, which we denied on October 30, 2013.

On February 10, 2014, a sanction hearing convened before the Referee. Respondent, pro se, did not call any witnesses but testified on her own behalf and introduced documentary evidence. The Committee did not call any witnesses but introduced documentary evidence. Both parties submitted post-hearing memoranda; the Committee argued that respondent should be suspended for two years, and respondent urged a

private reprimand. By report dated April 9, 2014, the Referee recommended that respondent be suspended from the practice of law for two years.

On July 22, 2014, a Hearing Panel heard oral argument. The Committee argued that the Referee's report should be confirmed in its entirety; respondent, now represented by counsel, urged a private reprimand. Both parties filed preargument and postargument submissions with the Hearing Panel. In a report dated October 31, 2014, the Hearing Panel confirmed the Referee's factual findings but modified his sanction recommendation, by suggesting a decrease of the suspension to one year.

Now, by petition dated May 29, 2015, pursuant to Judiciary Law § 90 (2) and 22 NYCRR 603.4 (d) and 605.15 (e) (2), the Committee moves for an order confirming the Hearing Panel's findings as to aggravation and mitigation, suspending respondent for no less than one year (for the actions which we previously described and held to be misconduct in our order of July 8, 2013), or imposing a sanction that this Court deems just and appropriate, and granting such other and further relief as this Court deems just and proper. Respondent opposes the Committee's petition and requests that this Court impose no greater sanction than a public censure.

Respondent's misconduct occurred during the course of protracted litigation involving two LLCs controlled by her immediate family. Respondent was a member of both LLCs and counsel of record. In 2002, when the litigation at issue commenced, respondent had limited legal experience. Specifically, respondent held only temporary or part-time positions as a law intern or clerk until she was employed in January 2005 as an Administrative Law Judge for the New York City Environmental Control Board, and later as an ALJ with the New York City Department of Health. Respondent was not employed as a practicing attorney prior to January 2013.

Respondent, her sister, Esther Nash, and mother, Dorothy Nash, were the principals of 501 Second Street, LLC (501 LLC) which owned a building located at 501 Second Street in Brooklyn. In October 2001, 501 LLC leased the building for 48 years to Gihon LLC (Gihon). In January 2002, Gihon commenced an action against 501 LLC in Supreme Court, Kings County for breach of contract, alleging, inter alia, that 501 LLC had failed to deliver possession of the premises, and for a declaratory judgment as to the rights and obligations of the parties under the lease.

Between April 2002 and November 2006, the court issued various adverse decisions against 501 LLC which included contempt judgments totaling approximately $116,000. In December 2003, in an effort to enforce one of its contempt judgments, Gihon delivered a property execution notice to the Sheriff and thereafter a sale of the 501 Second Street property was scheduled. On or about December 23, 2003, a deed, purportedly dated October 10, 2003, was filed with the New York City Register's office which conveyed the Second Street property from 501 LLC to 501 Second Street Holding Corp. (501 Corp.). Respondent was the notary public who acknowledged her mother's signature on the deed.

In March 2004, respondent commenced an action in Supreme Court, Kings County on behalf of 501 Corp. to enjoin the Sheriff's sale based on the fact that 501 LLC, the judgment debtor, no longer owned the property. Respondent also brought an order to show cause to stay the pending sale. By decision dated April 16, 2004, the court denied a stay, dismissed the underlying action, directed the Sheriff to proceed with the sale of the property, and sanctioned 501 Corp. $7,500 payable to the Sheriff. In its decision, the court suggested that the deed at issue was backdated by respondent and referred the matter to the District Attorney for investigation. In our collateral estoppel order this Court found respondent's actions to prevent the Sheriff's sale amounted to misconduct, however, we declined to find disciplinary violations regarding the allegedly backdated deed since the court did not explicitly find such.

At the sanctions hearing before the Referee, respondent testified that the proceeding to stay the Sheriff's sale was proper because personnel in the Sheriff's office advised her to initiate the proceeding, and 501 LLC was never served with the underlying contempt judgment, a restraining notice, or the property execution notice. The Referee noted that respondent made similar claims in her opposition to the Committee's collateral estoppel petition, which were already rejected by this Court.

Gihon sued 501 LLC to set aside the previously discussed deed of transfer. By decision of December 28, 2007, the court granted Gihon summary judgment, finding that the transfer was a fraudulent conveyance in violation of Debtor Creditor Law § 276. The court's findings underlying its decision granting Gihon summary judgment, which this Court affirmed on appeal, are part of the misconduct findings previously made by this Court (DR 1-102 [a] [4], [5] [22 NYCRR 1200.3 (a) (4), (5)]).

In December 2010, Gihon entered a judgment against 501 LLC in the amount of $203,280. As part of its collection efforts, it subpoenaed respondent, in her individual capacity and as a member of the judgment debtor, to appear at a deposition and to produce documents. Respondent did not comply with the subpoenas, nor did she move to quash it, and by order of July 19, 2011 the court found respondent in contempt. Respondent purged the contempt by filing timely answers to the subpoenas. The court's contempt finding, even though it was purged, is part of this Court's prior misconduct findings (Rules of Professional Conduct rules 3.4 [c]; 8.4 [d]).

Respondent testified before the Referee that the deed transfer was not dishonest, fraudulent, nor intended to thwart Gihon's enforcement of its contempt judgment. She testified that the deed had been executed prior to entry of the contempt judgment, and that there was no wrongdoing on her part. Respondent further testified that she was aware of the court's March 13, 2003 order holding 501 LLC in contempt and imposing daily contempt fines but, in her view, it was "just an order . . . a warning," and not "a judgment." Respondent, as justification of her actions, stated that the court's contempt order failed to state that a set monetary sum was due, nor did it establish a payment deadline.

When asked to explain why she waited until December 2003 to record a deed which was purportedly executed on October 10, 2003, respondent could not provide any explanation, but she claimed that the delay in recording the deed was a nonissue. The Referee found that, given respondent had previously been employed at a real estate law firm, her response "stretch[ed] credibility." Respondent denied that the fraudulent conveyance harmed Gihon or that the resulting action to set aside the conveyance wasted court resources.

As to the July 2011 contempt finding against her, respondent testified that the subpoenas served by Gihon were an improper discovery tool and violated the directives of the court, which had previously ordered that all discovery requests be made through an appointed referee. Respondent further testified that various "protective orders" were in place which prohibited Gihon's counsel from compelling respondent to appear at their offices. As noted, although respondent purged the contempt, she was still found to have committed misconduct.

In June 2004, nearly one month after the dismissal of 501 LLC's action to stay the Sheriff's sale, respondent's mother,

Dorothy Nash, executed a $1 million credit line mortgage on behalf of 501 Corp. in favor of Norma Vigo, a private lender. 501 Corp. drew $675,000 against the credit line but then defaulted on the mortgage. In December 2006, Vigo commenced a foreclosure action against 501 Corp. Respondent, who appeared as 501 LLC and 501 Corp.'s counsel in the matter, moved to dismiss Vigo's complaint prior to serving an answer. The court denied the motion and directed her to serve an answer. Instead, respondent made four motions for reargument all of which were denied. By decision dated October 22, 2010, the court denied respondent's fourth reargument motion, finding it entirely without merit, and sanctioned respondent $1,500 for engaging in frivolous motion practice; $1,000 was to be paid to Vigo as attorney's fees and $500 was to be paid to the Lawyers' Fund for Client Protection. Respondent unsuccessfully appealed the sanctions. The court's October 22, 2010 sanction order was the basis for this Court's finding respondent engaged in frivolous conduct.

At the sanction hearing, respondent continued to take the position that her repeated motions to reargue did not constitute frivolous motion practice. Respondent further testified that she had not paid the $1,000 sanction to Vigo's counsel because no sanction hearing had been held. In addition, respondent testified that, in her view, she was not required to pay the sanctions award to Vigo's counsel because, among other things, they failed to follow proper procedure by entering a judgment against respondent and then serving her with a notice of entry. Respondent testified that, while her appeal of the sanctions award was unsuccessful, Vigo's counsel never pursued collection of the sanctions. Respondent also testified that Vigo's counsel may have added the sanction award to the foreclosure judgment entered against her client.

In June 2010, the Appellate Division, Second Department sanctioned respondent in the amount of $500, payable to the Lawyers' Client Protection Fund, for making disparaging remarks about opposing counsel in the course of motion practice related to an appeal in the Vigo foreclosure action, which this Court included as part of its misconduct findings. Respondent testified that the Second Department's sanction order failed to identify the actual offensive statements she made and about whom they were made, and that she is unsure exactly what the Second Department sanctioned her for because the order "doesn't say it." The Referee noted that

respondent unsuccessfully made this same argument in opposition to the Committee's collateral estoppel petition.

In mitigation, respondent presented, among other things, six character letters attesting to, inter alia, her honesty. The Referee noted, however, that none of the letters were addressed to the Committee, nor did they evidence any knowledge of this Court's misconduct findings. Further, the letters, the most recent of which was dated four years previously, are in fact recommendations for various jobs or appointments.

As part of her mitigation, respondent testified that, in 2012, she was found "qualified" and "highly qualified" by the Independent Judicial Election Qualification Commission for the Second Department as a candidate for Civil Court Judge and Justice of the Supreme Court, respectively. When asked whether she had disclosed the pending disciplinary proceeding against her, respondent testified that she could not recall if she had done so. At the request of the committee staff counsel, the Referee asked respondent to produce her judicial screening applications, but she later claimed that she could not locate them.

Respondent testified that she was "sorry" but denied that she had engaged in any misconduct.

In recommending a two-year suspension, the Referee observed that "Respondent's misconduct is aggravated by Respondent's refusal to acknowledge the wrongful nature of Respondent's conduct and lack of remorse. Respondent's only regret is that the Court and the Committee 'misunderstood' and 'misinterpreted' Respondent's position." On the issue of the backdating of the deed, he noted, "While there was no judicial finding that the deed was backdated, Respondent's attempt to explain the delay in its execution and recording is simply not credible."

The Referee also noted that

> "Respondent disregarded the Court's order directing that Respondent pay $1,000 to Vigo's counsel for making repeated, frivolous motions to reargue the denial of Respondent's motion to dismiss the foreclosure action.

> "Respond[ent], rather than acknowledge wrongdoing, Respondent attempts to blame the circumstances which led to this disciplinary proceeding entirely on Respondent's adversary and the courts. Respondent's failure to acknowledge the wrongful

conduct constitutes evidence in aggravation. *See,* Section 9.1 (g) of the American Bar Association Standards for Imposing Lawyer Sanctions."

The Referee also found respondent's evidence in mitigation lacking, pointing out that she called no witnesses and her character references consist of six letters of recommendation for various jobs or appointments, the most recent of which is four years old. The Referee noted that the letters fail to address respondent's current character and fitness to practice law, or reputation of good character, honesty and integrity in the community or knowledge of the pending proceedings and the use of the letters herein.

Turning to the argument that respondent was relatively inexperienced, the Referee opined, "While Respondent's lack of experience in practicing law is a mitigating factor, it is outweighed by the protracted nature of Respondent's misconduct, and failure to acknowledge Respondent's misconduct and lack of remorse."

The Hearing Panel adopted the Referee's factual findings but modified the sanction recommendation from a two-year suspension to a one-year suspension. In so doing, it disagreed with the Referee as to what our precedents suggest is an appropriate sanction. However, the Hearing Panel agreed that the respondent had "presented no mitigation evidence of any significance." It further observed that "[i]t is not insignificant that respondent did not produce copies of her applications to two judicial screening panels, which would have informed the Referee and Panel of respondent's honesty." It also noted "that the Supreme Court found that respondent had actual intent to defraud a creditor when she engaged in conduct to convey the Premises from 501 LLC to the Holding Corp."

The Committee now requests that this Court confirm the Hearing Panel's findings as to aggravation and mitigation and suspend respondent for no less than one year.

Respondent opposes the Committee's motion and requests that this Court impose no greater sanction than a public censure.

Here, respondent's misconduct was established based upon five prior court decisions, and included her participation in a fraudulent conveyance to defeat enforcement of a judgment, thereby flouting prior court orders; frivolous litigation and motions; disparaging comments regarding an adversary for which she was twice sanctioned; and a contempt finding for refusing

to comply with two subpoenas (which she purged). Respondent's misconduct is aggravated by her repeated and steadfast refusal to acknowledge any wrongdoing whatsoever and failure to express remorse.

The record is devoid of any meaningful mitigation evidence. It is true that at the outset of the litigation which resulted in these proceedings respondent was a relatively inexperienced attorney. But as the Committee rightly argues, while respondent's missteps might have been attributed to inexperience when the litigation commenced, after more than a decade, such argument no longer is persuasive. As the Committee notes, as recently as May 30, 2013, more than 10 years after her admission, respondent was again sanctioned by the Second Department in connection with the litigation at issue. In addition, we agree with the Committee that, unlike here, the cases cited by respondent in support of a censure or shorter suspension involved compelling mitigation, not the least of which was acknowledgment of wrongdoing and remorse, or concerned nonvenal misconduct.

This Court has imposed suspensions ranging from six months to two years for similar misconduct (*see e.g. Matter of Gurvey*, 102 AD3d 197 [1st Dept 2012], *appeal dismissed* 20 NY3d 1085 [2013] [six-month suspension for, inter alia, frivolous litigation, significant health problems cited in mitigation]; *Matter of Rosenberg*, 97 AD3d 189 [1st Dept 2012] [one-year suspension for pursuit of fraudulent and meritless litigation]; *Matter of Chiofalo*, 78 AD3d 9 [1st Dept 2010] [two-year suspension for offensive written correspondence and meritless federal action]; *Matter of Goldman*, 20 AD3d 90 [1st Dept 2005] [one-year suspension for, inter alia, fraudulent conveyance in violation of Debtor Creditor Law and restraining orders, significant mitigation]). The fraudulent conduct at issue in *Matter of Whitbeck* (284 AD2d 80 [1st Dept 2001] [four-year suspension]) and *Matter of Yamada* (197 AD2d 235 [1st Dept 1994], *lv denied* 83 NY2d 761 [1994] [three-year suspension]) is more egregious than the conduct at issue in this matter. Thus, we conclude, as did the Referee, that a two-year suspension is warranted.

Accordingly, the Committee's motion should be granted to the extent of confirming the Hearing Panel's findings regarding aggravation and mitigation, disaffirming the Hearing Panel's recommendation of a one-year suspension, and respondent should be suspended from the practice of law in the State of New York for a period of two years, and until further order of this Court.

Tom, J.P., Mazzarelli, Moskowitz, Richter and Feinman, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of two years, effective December 21, 2015, and until further order of this Court.