[607 NYS2d 305]

In the Matter of MARK J. HELLER (Admitted as MARK JAY HELLER), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, February 8, 1994

### APPEARANCES OF COUNSEL

*Andral N. Bratton* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*Michael S. Ross* of counsel *(LaRossa, Mitchell & Ross,* attorneys), for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent, Mark J. Heller, was admitted to the practice of

law in New York by the Second Judicial Department on December 17, 1969. At all times relevant herein respondent has maintained an office for the practice of law within the First Judicial Department.

On or about January 26, 1993, respondent was served with a notice and statement of charges, containing 38 counts alleging multiple violations of the Disciplinary Rules. The charges allege that respondent had engaged in a pattern of misconduct involving misrepresentations, deceit, abusive treatment of clients, fee gouging, neglect and willful failure to return unearned retainers to his clients. This pattern of misconduct occurred during the period 1989 through 1992, and involved respondent's mishandling of the matters of 12 separate clients.

After hearings on the charges, respondent, through his counsel, entered into a stipulation containing substantial admissions of professional misconduct. The Hearing Panel accepted the stipulation and adopted it as its own report and recommendation. By petition dated September 14, 1993, the Committee seeks an order confirming the findings of the Hearing Panel, including its recommendation that respondent be suspended from the practice of law for five years. We grant the petition, and confirm the report.

Each of the complaints against respondent contains similar allegations indicative of the admitted pattern of misconduct. In 1989, complainant Nereida Sorotos retained respondent to represent her with respect to vacating a default against her in her husband's divorce action against her. During their initial consultations, respondent encouraged Sorotos to withdraw everything "that's in the bank" for respondent's legal fee, stating to Sorotos that "you must bring it now, time is against you". He also made representations to Sorotos that in effect puffed her chances of prevailing in the litigation. As a result of respondent's representations, on or about June 26, 1989, Sorotos paid $14,000 to respondent as a retainer. At the time of respondent's discharge in February 1990, respondent refused to provide an accounting as requested on January 23, 1990, of services rendered and fees earned and did not return the balance of the unearned fees.

In March 1990, complainant Lucy Shih retained respondent and subsequently paid him a total of $5,000 for work to be performed in her matrimonial matter. On or about May 23, 1990, Shih discharged respondent and thereafter requested a refund of unearned fees. Respondent refused to return the

unearned portion of the $5,000 fee or to provide an accounting.

In September 1990, complainant Wendy Sue LeBeau retained respondent for the purpose of obtaining a final matrimonial settlement of money and property. During the period he served as LeBeau's counsel, respondent failed repeatedly to return LeBeau's phone calls, and was verbally abusive to her during a January 1991 meeting. Complainant discharged respondent as her attorney and demanded the return of the unearned portion of the fee. Respondent did not return the unearned portion of the $15,000 fee.

In January 1992, complainant Jose L. Santiago retained respondent to defend him in a criminal matter. Santiago paid respondent a $3,000 retainer. Thereafter, from February to June 1992 respondent failed to maintain contact with the Assistant District Attorney handling the matter. Santiago was indicted in June 1992, and, thereafter, discharged respondent as his attorney. Subsequent to his discharge respondent refused to communicate with Santiago's new counsel and ignored her requests for copies of his file pertaining to Santiago.

In January 1991, complainant Hiram Feliciano retained respondent to defend Feliciano's son, Carlos, in a criminal matter. On or about June 27, 1991, Feliciano gave respondent $9,000 to obtain Carlos's release and for legal fees. Hiram Feliciano discharged respondent as his attorney in February 1992, and requested the return of the unearned portion of the fee. Respondent did not return the unearned portion of the $9,000 fee.

In July 1990, Thomas Macchia was arrested for grand larceny. Thereafter, his mother, Marie Macchia, retained respondent to defend him. Marie Macchia paid respondent $6,000 in cash as an initial retainer and Thomas Macchia paid him an additional $8,000. The Macchias ultimately paid respondent $6,000 additional in fees for a total of $20,000. In order to obtain the additional $6,000 referred to above, respondent telephoned Marie Macchia, used abusive language and told her Thomas Macchia would go to jail unless the family paid him more money. He also claimed he needed additional money to "talk to the right people", and told Marie Macchia not to tell Thomas Macchia that she was giving him an additional payment. Thereafter, respondent also attempted to obtain additional payments from Thomas Macchia.

In September 1989, complainant Larry Erber retained re-

spondent to represent him in connection with a criminal securities fraud matter pending in the United States District Court for the Southern District of New York. In total Erber paid respondent $18,000 in legal fees. In December 1989, Erber discharged respondent as his attorney and demanded the return of the unearned portion of the legal fees paid. Respondent did not return to Erber the unearned portion of the $18,000 in fees.

In October 1990, complainant Julia Monroe spoke with respondent to discuss the representation of her son Carter in a criminal matter. During their initial telephone conversation, respondent exaggerated what he would do and told Julia Monroe that he would get Carter out of jail before arraignment and that given his "extensive contacts in the medical community", he would arrange psychiatric care for Carter's medical disorder. Thereafter, respondent advised Julia Monroe that the entire fee, including trial, for representing Carter Monroe could be as much as $35,000. Julia Monroe ultimately paid respondent approximately $23,500.

By December 1990, the Monroes had expressed their dissatisfaction with respondent's lack of effort on their behalf. Respondent told Julia Monroe that Carter was "facing a whole host of felony counts, and if you drop [respondent's] representation, Carter's going to be facing the grand jury the day after Christmas". The Monroes then discharged respondent as their attorney and demanded return of the unearned portion of the fee, of which respondent returned only $10,000.

In November 1991, complainants Ann L. Hoy and Ivette Serrano, two police officers employed by the City of New York, retained respondent to represent them in connection with their administrative disciplinary hearing and possible criminal proceeding arising out of an off-duty altercation with another police officer. Hoy and Serrano paid respondent initial retainers of $1,500 each. Thereafter, although respondent eventually obtained a dispositional offer, he failed to keep two appointments with the Public Advocate of the police department, that had been scheduled to negotiate a settlement of the matter.

In January 1992, respondent asked Hoy to do a criminal history check of police department records on another client. Hoy declined to do so because it would jeopardize her job. On January 20, 1992, respondent spoke to Hoy and Serrano and overstated the seriousness of the case against them and its possible criminal implications.

In total, Hoy and Serrano paid respondent a total fee of $7,500. In March 1992, as a result of their dissatisfaction with respondent, Hoy and Serrano retained new counsel and demanded, without success, that respondent return the unearned portion of the retainer.

In May 1991, complainant Gloria Minozzi retained respondent to represent her father, Herman Galeano, who had been arrested in Nassau County on a charge of sale of cocaine, a class A-1 felony. Respondent received $50,000 in legal fees from Minozzi for the representation of her father. In May 1992, Minozzi expressed dissatisfaction with respondent's representation of her father. In that conversation, respondent exaggerated the facts of the case and claimed that if he were discharged, her father's case would have a substantially more severe outcome.

Pursuant to the stipulation, respondent has admitted that his conduct as set forth above constitutes professional misconduct involving dishonesty, fraud, deceit, or misrepresentation in violation of Code of Professional Responsibility DR 1-102 (A) (4); failing to return the unearned portion of a retainer fee in violation of DR 2-110 (A) (3); neglect of legal matters entrusted to him in violation of DR 6-101 (A) (3); and conduct which adversely reflects upon his fitness to practice law in violation of former DR 1-102 (A) (6) and DR 1-102 (A) (7) (22 NYCRR 1200.3 [a] [7]) (after the 1990 amendments).

A review of the evidence presented to the Hearing Panel, in particular the stipulation entered into between the parties which contains admissions of misconduct by respondent, indicates that there is ample evidence to support the Hearing Panel's findings that respondent is guilty of 18 violations of the Code of Professional Responsibility. Specifically during the past four years, respondent has engaged in a pattern of puffery and deceit in persuading clients to retain him and to immediately pay him significant retainer fees. Thereafter, he neglected several of his clients' legal matters and verbally abused his clients. When the clients indicated that they were about to discharge him as their attorney, respondent exaggerated and told clients in two criminal matters that if they discharged him, the clients would face more serious results. Finally, when clients did discharge him, respondent willfully refused to return the unearned portions of their legal fees for their uncompleted matters.

The Committee reports that it is satisfied that respondent

has made restitution, where appropriate, with respect to the unearned retainer payments. We confirm the Committee's report, including its recommendation of a five-year suspension, in light of respondent's contrition. *(See, Matter of Rabinowitz,* 189 AD2d 402; *Matter of Segal,* 190 AD2d 295.)

Accordingly, the petition is granted, the Hearing Panel's findings are confirmed, and respondent is suspended from the practice of law for a period of five years from the date of this Court's order, and until the further order of this Court.

The unpublished Per Curiam opinion entered herein on January 27, 1994 is hereby recalled and vacated.

MURPHY, P. J., CARRO, ELLERIN, ASCH and NARDELLI, JJ., concur.

Petition granted, the Hearing Panel's findings are confirmed and respondent is suspended from the practice of law for a period of five years, effective February 8, 1994, and until the further order of this Court. The Per Curiam opinion entered herein on January 27, 1994 is recalled and vacated, and a new Per Curiam opinion released February 8, 1994 substituted therefor.