[777 NYS2d 116]

In the Matter of the Law Firm of WILENS AND BAKER and LAW-
RENCE WILENS (Admitted as LAWRENCE MARK WILENS), At-
torneys, Respondents. DEPARTMENTAL DISCIPLINARY COM-
MITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, May 20, 2004

*Thomas J. Cahill* (*Sherry K. Cohen* of counsel), for petitioner. *Hal R. Liberman* for respondents.

## OPINION OF THE COURT

Per Curiam.

Respondent Lawrence M. Wilens was admitted to the practice of law in the State of New York by the Second Judicial Department on October 28, 1972. At all times relevant to these proceedings, respondent maintained an office for the practice of law within the First Judicial Department, known as Wilens and Baker, also a respondent in this proceeding.

On or about December 23, 2002, the Departmental Disciplinary Committee served a notice of charges on respondent Wilens and Baker (WB Firm) and respondent Lawrence M. Wilens, a principal of the firm. The notice included a total of 36 charges involving 11 client matters. In a prehearing stipulation entered into on February 12, 2003, the WB Firm admitted to 19 violations of New York's Code of Professional Responsibility, including 13 instances of neglect of client matters in violation of Code of Professional Responsibility DR 6-101 (a) (3) (22 NYCRR 1200.30), three instances of failing to promptly deliver property to a client to which the client is entitled in violation of DR 9-102 (c) (22 NYCRR 1200.46), two violations of DR 1-102 (a) (7) (22 NYCRR 1200.3) for rude and uncivil conduct that adversely reflects on its lawyers' fitness to practice and one violation of DR 1-102 (a) (5) for conduct prejudicial to the administration of justice. In the same stipulation, respondent Wilens admitted to eight violations of the Code based on rude and uncivil conduct to a client.*

The stipulation includes the facts underlying the charges admitted by the respondents. Generally, the charges arose out of respondents' representation of illegal aliens who retained respondents to handle their immigration cases. Many were non-English speaking persons with low to moderate incomes who paid an initial retainer, followed by a payment schedule for the remainder of the fee. In several instances, when the client or a family member went to the firm to discuss the case or to inquire as to its status, Wilens or a firm employee would respond by demanding immediate payment of overdue or additional fees and would refuse to discuss the case until payment was made.

---

* Several charges were also withdrawn pursuant to the stipulation.

After such clients or family members indicated that they could not pay all of the requested fee or persisted in inquiring about their case, respondents would treat them in a rude and demeaning manner, often yelling at them or ordering them to leave the office.

In addition, respondents neglected several of the client matters entrusted to them by failing to fully explain the status of their immigration cases or by neglecting to provide them with information that would be helpful to their case. Lastly, it was the respondents' practice not to release copies of a client's file after the firm had been discharged unless the former client agreed in writing that no funds previously paid to the firm should be reimbursed to the client.

On April 2, 2003, a hearing was held before a Special Referee, who sustained each of the charges based upon respondents' admissions in the stipulation. The Referee also heard evidence in aggravation and mitigation for purposes of considering an appropriate sanction. In mitigation, respondents offered seven character witnesses and the testimony of the individual respondent. Respondents further noted that Wilens had never been disciplined in over 30 years of practicing law; he acknowledged the seriousness of the charges and expressed remorse; he and the WB Firm had instituted significant administrative changes to improve attorney-client relations in their high-volume practice; he apologized to each complainant and reimbursed their fees; he completed an anger management therapy program; and he and the WB Firm had fully cooperated with the Committee's investigation and had stipulated to the Committee's allegations of wrongdoing.

At the conclusion of the hearing before the Referee, Committee staff recommended that the WB Firm and Wilens receive public censure. In contrast, respondents argued that they should be privately admonished. The Referee found the recommendations of the Committee to be "fair and reasonable" and adopted them in his report. He found that the respondents had "conducted themselves offensively with their clients . . . and also acted in intimidating ways to obtain additional or due fee payments," and that consequently, "[they] should face the consequences of public knowledge of what they have done, notwithstanding their real and sincere efforts at reform." The Referee also found it appropriate to impute to the WB Firm the misconduct of its name partner.

A Hearing Panel was convened to hear argument and report on the Referee's recommendations and reached the same find-

ings and conclusions as the Referee, except that the Panel found the existence of a pattern of rude and uncivil conduct toward clients, based upon respondents' admissions to such a pattern in the stipulation.

On the issue of sanction, the Hearing Panel concluded that the eight instances of rude and uncivil conduct admitted to by Wilens constituted serious misconduct that warranted public discipline. The Hearing Panel further concluded that this was one of the "rare instances" where a law firm should be disciplined since the pattern of misconduct indicated a firm-wide problem and the highly visible misconduct of a name partner must have been apparent to all members of the WB Firm.

The Committee now seeks an order pursuant to 22 NYCRR 603.4 (d) confirming the findings of fact and conclusions of law of the Hearing Panel and imposing the sanction of public censure for Wilens and the WB Firm. Respondents have cross-moved for an order confirming the Referee's findings and conclusions, but disaffirming the recommendations of public censure for Wilens and the WB Firm, and instead imposing the sanction of private reprimand as to both respondents.

The Hearing Panel's sanction of public censure for each respondent should be confirmed and the cross motion to disaffirm in part should be denied. We agree with the Hearing Panel's conclusions that respondents have engaged in a pattern of misconduct in which they acted in a rude and demeaning manner to clients in violation of the Code. Wilens's admission to eight separate instances of such misconduct in a relatively short period of time belies his argument that these acts of misconduct should be considered isolated occurrences (see Matter of Heller, 195 AD2d 134, 135 [1994] [pattern of misconduct which included abusive treatment of clients and neglect of legal matters warranted five-year suspension]).

We reject respondents' argument that public censure of the WB Firm is too harsh a sanction in light of the nontraditional type of neglect alleged here—poor communications with firm clients. Although the stipulated facts support respondents' claim that they did not neglect legal matters "in the classic sense of not doing the work, or not doing it competently," this argument overlooks the prejudice and anguish caused by their pattern of threatening to cease working on their clients' cases until additional legal fees were paid. In our view, it would be particularly inappropriate to impose private discipline against an attorney

or law firm that engages in a pattern of misconduct involving rude and discourteous behavior to clients—conduct that strikes at the very heart of a lawyer's or law firm's relationship to the public.

We also find that the Hearing Panel gave proper consideration to the reform measures taken by Wilens and the WB Firm in recommending a public censure (*see Matter of Leavitt*, 291 AD2d 37, 39 [2002]; *Matter of Danas*, 236 AD2d 44 [1997]). We are impressed by the WB Firm's significant strides in improving its administrative scheme and the fact that Wilens has apparently committed himself to exhibiting a renewed professionalism toward all clients. However, we disagree with respondents that such measures make any public discipline superfluous on the ground that the problems that caused the misconduct have already been remedied. Disciplinary sanctions serve both deterrent and punitive functions (*see Matter of Tapper*, 102 AD2d 332, 334-335 [1984]), and although respondents' reforms of their office procedures likely will assist in preventing future violations, they do not serve the punitive purpose of demonstrating that such unbridled misconduct will not go unpunished (*see Matter of Nearing*, 16 AD2d 516, 518 [1962]).

Moreover, while the respondents' reform measures certainly helped mitigate their misconduct, the Committee properly notes that these measures and other evidence in mitigation were already considered by the Referee and Hearing Panel, neither of whom agreed that private discipline was an adequate sanction to redress the misconduct of the WB Firm and Wilens. Since absent these reform efforts respondents' misconduct likely would have warranted the more severe sanction of suspension (*see Matter of Heller*, 195 AD2d at 138-139; *Matter of Menagh*, 118 AD2d 373 [1986]), we deny the cross motion and find that public censure is the appropriate discipline for the WB Firm and Wilens.

Accordingly, the Committee's petition for an order confirming the findings of fact and conclusions of law set forth in the Hearing Panel's determination should be granted, and respondents WB Firm and Wilens publicly censured.

BUCKLEY, P.J., SULLIVAN, ELLERIN, WILLIAMS and GONZALEZ, JJ., concur.

Respondents Lawrence Wilens and the law firm Wilens and Baker publicly censured. Cross motion to disaffirm in part the Hearing Panel's findings of fact and conclusion of law denied.