OPINION OF THE COURT
Per Curiam.
The Grievance Committee for the Tenth Judicial District served the respondents with a petition dated November 3, 2008, containing four charges of professional misconduct involving multiple client matters. The respondents served an answer, dated February 10, 2009. On June 30, 2011, the parties entered into a stipulation, which addressed, inter alla, the facts alleged in the petition. One client matter was withdrawn. After a hearing on June 30, 2011, the Special Referee sustained charge two, based on one client matter (Durand). With respect to charge one, the Special Referee sustained the factual allegations of two of the underlying client matters (Quader and Kerschhagel), but did not find a pattern and practice of misconduct necessary to sustain the charge as a whole. Charges three and four, which are derivatives of charge one, were also not sustained by the *15 Special Referee. The respondents now move to confirm in part, and disaffirm in part, the Special Referee’s report. The Grievance Committee cross-moves to confirm in part, and disaffirm in part, the report of the Special Referee.
The charges are predicated upon a common set of facts, as amended by the stipulation entered into by the parties on June 30, 2011, as follows:
Cohen & Slamowitz, LLP (hereinafter C&S), is a law firm engaged in the practice of law with offices at 199 Crossways Park Drive, EO. Box 9004, Woodbury, New York 11797-9004. David A. Cohen (hereinafter the individual respondent) is the senior partner of C&S. As senior partner, the individual respondent oversaw the legal activities of C&S’s collection practice during the relevant period of time, and indirectly supervised approximately 300 employees, including attorneys, paralegals, collection staff, and support staff. In April 2002, the individual respondent had an informal discussion with Grievance Committee counsel, and was advised to “exercise caution, try to be careful and supervise [his] staff adequately, make sure [he had] appropriate and reasonable procedures in place, and that [he monitored those] procedures.” The individual respondent also was advised that he, his partner Mitchell G. Slamowitz, and the attorneys employed by C&S were responsible for the conduct of their staff.
Complaint of Frank A, Mandriota, Sr.
In or about March 2003, the individual respondent and C&S (hereinafter together the respondents) were retained to collect a debt of approximately $1,800 from a debtor identified as “Frank Mandriota.” The respondents undertook collection efforts against Frank A. Mandriota (hereinafter Mandriota Senior), a 73-year-old man residing in Plainview, New York. The respondents were provided with an address, in Huntington, New York, as well as the Social Security number for the actual debtor, Frank G, Mandriota (hereinafter Mandriota Junior), the 53-year-old son of Mandriota Senior. Despite being provided with the foregoing, the respondents caused a summons and complaint in the name of “Frank Mandriota” to be served at a property in Farmingdale, New York, owned by Mandriota Senior. Thereafter, the respondents obtained a judgment in the District Court, Nassau County, which was entered in or about December 2003, and became a lien on Mandriota Senior’s property.
*16 Complaint of Adrian K. Hyde
In or about February 2005, the respondents were retained to collect a debt of approximately $2,474.20 from a debtor identified as “Adrian Hyde.” Between February 28, 2005 and March 16, 2005, the respondents undertook collection of the debt against “Adrian K. Hyde,” who resided at an address on Broadway in New York, New York. The respondents were advised that “Adrian K. Hyde” at that address on Broadway in New York, New York, was not the actual debtor. Despite this advice, the respondents attempted, on or about July 11, 2005, to have a summons and complaint served on “Adrian K. Hyde” at that address on Broadway in New York, New York.
Complaint of Dr, Gholam Mujtaba
In or about January 2005, the respondents initiated an action to collect a debt from a debtor identified as “Ghulam Mujtaba” of Flushing, New York. In pursuing collection of the debt, the respondents erroneously pursued the matter against “Dr. Gholam Mujtaba” of Corona, New York. In or about August 2005, the respondents discontinued collection efforts against Dr. Mujtaba. On or about January 31, 2006, the respondents were retained to collect an unrelated debt from a debtor identified as “Ghulam Mujtaba.” Once again, the respondents undertook to collect the debt from Dr. Gholam Mujtaba. During their collection efforts, the respondents were notified that Dr. Mujtaba was not the actual debtor. Despite being so advised, the respondents caused a summons and complaint to be served on Dr. Mujtaba in or about October 2006.
Complaint of Mohammad Quader
On or about November 29, 2005, the respondents were retained to collect an outstanding debt of approximately $1,450.13 from a debtor identified as “Mohammad Qader,” residing on Seventh Avenue in Brooklyn, New York. The respondents thereafter undertook collection efforts against “Mohammad Quader,” residing on Alderton Street in Rego Park, New York. The respondents were advised that “Mohammad Quader,” of Rego Park, New York, was not the actual debtor. Despite being so advised, the respondents caused a summons and complaint to be served upon him.
Complaint of Peter Kerschhagel
On or about June 17, 2004, the respondents were retained to collect an outstanding debt of approximately $5,107.34 from a *17 debtor identified as Peter Kerschhagel. In or about February 2005, the respondents undertook collection efforts against Peter Kerschhagel of Dobbs Ferry, New York, formerly of Irvington, New York. In May and June of 2005, the respondents were advised, and provided with evidence, that the debt they were attempting to collect had been satisfied in May 2003, and that Kerschhagel resided in Dobbs Ferry, New York. Despite receiving this information, in or about February 2006, the respondents caused substituted service of a summons and complaint to purportedly be effected upon Kerschhagel at his former address in Irvington, New York. A default judgment was awarded to the respondents’ client in or about May 2006. The respondents thereafter caused the bank account of Kerschhagel to be restrained, despite evidence that the subject debt had been satisfied, and that Kerschhagel resided in Dobbs Ferry.
Complaint of Barbara Durand
In or about March 2006, the respondents were retained to enforce a judgment against a debtor named Barbara Durand. In or about June 2006, by agreement with Durand, the respondents were sent a check in full satisfaction of the judgment. On March 16, 2007, the respondents sent a satisfaction of judgment, dated January 11, 2007, to the City Court of Syracuse, New York. That document was rejected by that court. On or about March 22, 2007, Durand received a copy of the satisfaction of judgment. As of April 27, 2007, the respondents’ records reflected that the satisfaction of judgment was again “to be filed” with the court.
Charge one alleges that the respondents engaged in a pattern and practice of conduct prejudicial to the administration of justice by pursuing the collection of debts without conducting a reasonable and proper search to verify the identity and property of alleged debtors, and the validity of the alleged debts, based upon the Mandriota, Hyde, Mujtaba, Quader, and Kerschhagel matters, in violation of former Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]).
Charge two alleges that the respondents engaged in conduct prejudicial to the administration of justice by failing to timely file a satisfaction of judgment, and failing to provide a client with a copy of the satisfaction of judgment, based upon the Du-rand matter, in violation of former Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]).
Charge three alleges that the individual respondent, David A. Cohen, as senior partner of C&S, engaged in a pattern and *18 practice of failing to exercise reasonable management or supervisory authority over the conduct of firm employees so as to avoid conduct prejudicial to the administration of justice by those employees, based upon the facts alleged in charge one, in violation of former Code of Professional Responsibility DR 1-104 (d) (2) (22 NYCRR 1200.5 [d] [2]).
Charge four alleges that the individual respondent, David A. Cohen, engaged in a pattern and practice of conduct adversely reflecting on his fitness as a lawyer, based upon the facts alleged in charge one, in violation of former Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).
Based upon the respondents’ admissions and the evidence adduced, we find that charge one should have been sustained in its entirety.
In the Mandriota matter, the evidence shows that the respondents received the Social Security number and date of birth for the actual debtor, Mandriota Junior, from their client in or about March 2003. Moreover, Mandriota Senior or his wife informed the respondents, in writing, as early as June or July 2003, that the debtor they were seeking was Mandriota Junior, not Mandriota Senior. Nonetheless, the respondents proceeded against Mandriota Senior by causing substituted service of a summons and complaint naming “Frank Mandriota” to be effected at Mandriota Senior’s Farmingdale property, and improperly encumbering Mandriota Senior’s Farmingdale property upon the entry of a default judgment. The respondents admittedly made no independent efforts to verify who owned or resided at the Farmingdale address. The improper encumbrance was not released until March 2005, almost two years after it was entered, despite the respondents’ actual knowledge that Mandriota Junior did not own the property, and efforts by Mandriota Senior and his wife to have the encumbrance released when they became aware of it, beginning in or about December 2004.
In the Hyde matter, the evidence shows that the respondents pursued collection efforts against “Adrian K. Hyde” at an address on Broadway in New York, New York, even though their client provided no middle initial, and an address for an Adrian Hyde in Stony Point, New York. Despite evidence of at least six possible addresses for the subject debtor, a credit report indicating that the debtor’s middle initial was “R,” and both oral and written notification from “Adrian K. Hyde” that the respondents were pursuing the wrong individual, the respondents *19 nonetheless attempted to effectuate service upon him via “the front desk of [his] condominium” at the address on Broadway in New York, New York.
In the Mujtaba matter, the evidence shows that the respondents previously had pursued “Dr. Gholam Mujtaba,” when the actual debtor was “Ghulam Mujtaba.” The second matter was opened six months after the first matter was closed. Due to the proximity in time, the respondents’ attempt to obtain a credit report for “Ghulam Mujtaba” was denied in the second matter, as they were already in possession of a current credit report from the prior matter. We find that a simple review of information already in the respondents’ possession relative to their prior collection efforts could have prevented a second erroneous attempt to collect the debt of “Ghulam Mujtaba” from “Dr. Gholam Mujtaba.”
In the Quader matter, the evidence shows that the respondents pursued “Muhammad Quader” at a Queens address, when the actual debtor was “Muhammad Qader,” whose address was in Brooklyn. Despite being in possession of the latter information, which was provided by their client, and receiving two communications from Quader or his son disclaiming the debt, the respondents proceeded to suit. Although that suit was eventually discontinued by stipulation, the respondents thereafter sent Quader a letter offering him a “60% settlement of the . . . debt” in “full satisfaction.” After Quader or his son wrote to the respondents declining the settlement offer, the respondents sent Quader an information subpoena urging him, in an accompanying letter, to settle. The Special Referee found, and we agree, that the respondents’ conduct in this matter was “particularly egregious.”
In the Kerschhagel matter, the respondents commenced an action, and effected substituted service, at Kerschhagel’s former address in Irvington, New York, despite confirmation that he resided in Dobbs Ferry, New York, and despite the fact that the subject debt previously had been satisfied. Having obtained a default judgment after the copies of the summons and complaint that were mailed to Irvington were returned as “undeliverable,” the respondents proceeded to restrain Kerschhagel’s bank account, resulting in an irate call from Kerschhagel’s wife, in which she indicated that she and her husband were not aware of any default judgment. The respondents’ contemporaneous review of their file revealed that “the wrong address was served”; the “right address” previously had been verified; the *20 debt appeared to have been satisfied three years earlier; and proof of those facts had been provided. However, as of November 2006, the default judgment had yet to be vacated, and the file had yet to be closed, despite review of the file having occurred in or about August 2006. The Special Referee found, and we agree, that it is “inexplicable” that the respondents chose to serve Kerschhagel in Irvington, despite having information that his current address was in Dobbs Ferry.
The individual respondent, David A. Cohen, did not testify. Rather, the respondents relied primarily upon the testimony of an expert witness, Ronald M. Abramson, Esq. A creditors’ attorney and member of the Grievance Commission of Maryland, Abramson testified that the respondents’ conduct was both reasonable and proper in the aforementioned matters. According to Abramson, the respondents could not assume that what was being told to them by the debtors was correct, and that the onus was not upon the respondents to establish the validity of the debtors’ claims absent written notice from the debtors, within 30 days, following their presumed receipt of a validation letter pursuant to the Fair Debt Collection Practices Act (15 USC § 1692g; hereinafter FDCPA). Abramson testified, further, that in the absence of FDCPA violations, there could be no ethical violations. However, on cross-examination, Abramson conceded that there did not have to be a violation of the law for there to be professional misconduct.
Notwithstanding Abramson’s testimony, we find that the respondents’ conduct in the aforementioned matters was neither reasonable nor proper, particularly in the Mujtaba, Quader, and Kerschhagel matters, wherein the respondents had information at their disposal that they were pursuing the wrong debtor; continued to pursue a collection matter even after the matter was concluded; and restrained a debtor’s bank account despite improper service and knowledge that the debt had previously been satisfied. Based upon their unreasonable and improper conduct in multiple debt collection matters, we find that the respondents engaged in a pattern and practice of failing to act appropriately, and that this pattern and practice was prejudicial to the administration of justice, in violation former Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]; cf. Matter of Sokoloff, 95 AD3d 254 [2012]).
Based upon the respondents’ admissions and the evidence adduced, we find that the Special Referee properly sustained charge two as a result of the respondents’ failure to timely file, and provide Barbara Durand with, a satisfaction of judgment.
*21 Based upon our findings with respect to charge one, we find that charge three should have been sustained. Even if the individual respondent lacked personal knowledge of the particular client matters specified in charge one, the pattern and practice of misconduct established at the hearing, which were pervasive within C&S since 1996, were sufficient to impute such knowledge to him as senior partner of C&S. Not only was the individual respondent personally advised to “exercise caution . . . supervise [his] staff adequately . . . make sure [he had] appropriate and reasonable procedures in place . . . and . . . monitor [those] procedures,” but he and C&S had previously received numerous letters of caution and admonitions for similar conduct.
Based upon our findings with respect to charges one and three, we find that charge four should have been sustained. As the Court of Appeals held in Matter of Holtzman (78 NY2d 184, 191 [1991], cert denied sub nom. Holtzman v Grievance Committee for Tenth Judicial Dist., 502 US 1009 [1991]), “the guiding principle must be whether a reasonable attorney, familiar with the Code and its ethical strictures, would have notice of what conduct is proscribed.” Based upon the record before us, it is clear that the individual respondent had such notice.
In determining an appropriate measure of discipline to impose, we note that the respondents have a voluminous history of similar misconduct. On or about June 29, 2012, the individual respondent received a letter of reprimand emanating from complaints filed between 2004 and 2008, which were similar in nature to those presently before the Court. Additionally, from 1996 through 2005, a total of seven letters of caution, two admonitions, and three personally delivered admonitions, were issued to either the individual respondent or C&S, and they all emanated from complaints similar to those involved in the instant petition, and arose from conduct including the failure to conduct adequate investigations prior to commencing debt collections or restraining bank accounts, the failure to adequately supervise nonlegal staff, and the failure to adequately address inquiries and complaints from alleged debtors.
In mitigation, C&S’s managing attorney, Leandre John, testified that the respondents have undertaken efforts to reform their collection practices by adding a compliance department and other safeguards to prevent future misconduct. John testified that he presently oversees C&S’s legal procedures, supervises the attorneys and support staff in the legal department, *22 and assists the individual respondent and his partner in addressing legal issues. He testified, further, that the respondents’ compliance department reviews complaints from debtors and alleged debtors, as well as issues between managers and staff. The respondents’ expert witness, Abramson, testified that staff training is better now than it was prior to 2008. Moreover, he was impressed by the respondents’ compliance department.
Under the totality of the circumstances, particularly the remedial measures undertaken and improvements made, the respondents, David A. Cohen and the law firm of Cohen & Slamowitz, LLP, are each publicly censured (cf. Matter of Wilens & Baker, 9 AD3d 213 [2004]).
Eng, EJ., Mastro, Rivera, Skelos and Chambers, JJ., concur.
Ordered that the respondents’ motion to confirm in part, and disaffirm in part, the report of the Special Referee is denied; and it is further,
Ordered that the petitioner’s cross motion to confirm in part, and disaffirm in part, the report of the Special Referee is granted, such that all four charges are sustained; and it is further,
Ordered that the respondents, David A. Cohen and the law firm of Cohen & Slamowitz, LLI) are each publicly censured.