Matter of Schlossberg (2020 NY Slip Op 07712)





Matter of Schlossberg


2020 NY Slip Op 07712


Decided on December 22, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 22, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

David Friedman,J.P.,
Judith J. Gische
Ellen Gesmer
Peter H. Moulton
Manuel J. Mendez, JJ.


Motion No. 2020-03313, 2020-03430 Case No. 2020-03248 

[*1]In the Matter of Aaron M. Schlossberg (admitted as Aaron Morris Schlossberg), an attorney and counselor-at law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Aaron M. Schlossberg(OCA Atty. Registration No. 4157012), Respondent.



Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the Third Judicial Department on July 23, 2003.




Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Kevin M. Doyle, of counsel), for petitioner.
Matthew Bryant, Esq., for respondent.



Per Curiam 


Respondent Aaron M. Schlossberg was admitted to the practice of law in the State of New York by the Third Judicial Department on July 23, 2003, under the name Aaron Morris Schlossberg. At all times relevant to this proceeding, he maintained a law office within the First Judicial Department.
In July 2020, the Attorney Grievance Committee (AGC) filed a Petition of
Charges alleging that, in May 2018, respondent unleashed a verbal tirade in a
Manhattan delicatessen that was so offensive as to rise to the level of professional misconduct. The parties now jointly move under the Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.8(a)(5) for discipline by consent and ask this Court to impose a public censure. By cross motion, respondent requests that this Court seal his personal audio-visual recordings of the subject incident, which are included as an exhibit to the Petition of Charges.
The motion for discipline by consent is supported by a joint affirmation containing a statement of facts, conditional admissions of professional misconduct, factors in aggravation and mitigation, and agreed upon discipline, as well as respondent's affidavit acknowledging his admission to the stipulated facts, his freely and voluntarily given consent to the agreed-upon discipline, and his full awareness of the consequences of such consent (22 NYCRR 1240.8[a][5][i] and [ii]).
The parties stipulated to the following facts:
On May 15, 2018, respondent went to an establishment in Manhattan known as "Fresh Kitchen" to order a sandwich. Respondent heard a counter worker, Adrian Luna, conversing in Spanish with patron Santo Castillo. Respondent loudly confronted them for not speaking in English which included telling Castillo to "get the [expletive omitted] out of my country." He also asked Castillo, "Why don't you speak English?" "What do you have against my country?" "What's wrong with you?" and "Why don't you like English?" Respondent also told Castillo to "Get a [expletive omitted] dictionary and assimilate."
Upon turning his attention to Luna, respondent said, "You shouldn't be talking Spanish. That's improper. I'll tell your boss and I'll call ICE [Immigration and Customs Enforcement] and have each one of you [expletive omitted] deported." Respondent also addressed Luna as "ICE" when demanding to know the whereabouts of the sandwich he ordered.
Upon respondent's reiterating to Luna that he "shouldn't be talking to customers that way," a patron, Emily Serrano, intervened and told respondent that he "shouldn't be talking to a human being [] that way either, you shouldn't." In response, respondent told Serrano to "assimilate." Serrano replied by stating "assimilate what?" Respondent then retorted, "You don't know what it means? Get a dictionary." Serrano told respondent that he was "very ignorant." The exchange with Serrano deteriorated further [*2]with respondent telling her that he was brighter, better looking, and slimmer than she was. He also suggested more than once that Serrano should refrain from eating so she could "lose some [expletive omitted] weight," and he accused Serrano of threatening him and told her that her husband (whom Serrano referenced during their exchange) should speak English.
Upon returning his attention to Luna, respondent stated, "My complaint is that the staff here should not be speaking Spanish to customers." Luna responded that this was respondent's "personal opinion" at which point the restaurant's manager, Stan Kong Hyunsik, presented himself and inquired as to the problem. Serrano then began recording respondent with her smart phone. Respondent told Hyunsik, "My problem is that your clients and staff are speaking Spanish to customers when they should be speaking English." Respondent then identified at least three people who had spoken Spanish, he stated that he wanted his complaint forwarded to the CEO, and he asserted that he would follow it up. In addition, during the exchange with Hyunsik, respondent guessed that the Fresh Kitchen's workers were "not documented" and his "next call [would be] to ICE to have them kicked out of my country." Additionally, respondent stated, "They have tire balls to come here and live off of my money. I pay for their welfare. I pay for their ability to be here. The least they could do is speak English . And if you intend on running a place in Midtown Manhattan your staff should be speaking English not Spanish."
Someone, possibly Serrano, began to comment on "people like" respondent and the state of "our nation." Respondent interrupted and stated, "Honey, I'm calling ICE." Respondent again suggested to Serrano that she "take a break from the food." In response, Serrano suggested that respondent get hit by a car and used an expletive to refer to him. Serrano also stated that she was going to call the police and respondent replied, "Go ahead, sweetheart." Respondent then stated, "You're gonna let her call the cops on me for voicing my opinion; I'm not subsidizing your establishment."
A video recording of the incident was posted to the internet and widespread dissemination ensued, including coverage by television and print media. Respondent's identity and profession became known and resulted in adverse consequences for him that included expulsion by his commercial landlord, the resignation of his associate, public denunciation by some of his clients, and a crowd-funded Mariachi band playing outside his apartment house.
Approximately one week after the incident at issue, respondent posted an online apology stating —
"[t]o the people I insulted, I apologize. Seeing myself online opened my
eyes — the manner in which I expressed myself is unacceptable and is
not the person I am. I see my words and actions hurt people, and for
that I am deeply sorry. While people should be able to express
themselves freely, they should do so calmly [*3]and respectfully. What the
video did not convey is the real me. I am not a racist. One of the
reasons I moved to New York is precisely because of the remarkable
diversity offered in this wonderful city. I love this country and this
city, in part because of immigrants and the diversity of cultures
immigrants bring to this country. Again, my sincerest apologies to
anyone and everyone I hurt. Thank you."
While respondent conditionally admits the above facts, he asserts that he does not have first-hand knowledge of certain of the facts adduced by the AGC but, "for purposes of this [joint] motion [he] accept[s] the [AGC's] representations."
Respondent admits that his actions, as set forth above, violated the single charge alleged in the Petition of Charges, namely, that he engaged in conduct that adversely reflects on his fitness as a lawyer in violation of New York Rules of Professional Conduct (22 NYCRR 1200.00) rule 8.4(h).
The parties have stipulated that respondent's misconduct is aggravated by the following factors:
Luna was a vulnerable victim in that respondent confronted and threatened him while he was working, when he had no choice but to remain and endure respondent's abusive behavior; and
respondent had substantial experience in the practice of law at the time of his misconduct.
The parties have further stipulated that respondent's misconduct is mitigated by the following factors:
respondent has no prior discipline, nor have any complaints been made against him since the AGC commenced investigation of the 2018 incident at Fresh Kitchen; he fully cooperated with the AGC's investigation, which included providing his own smart phone recording of the incident at issue which was more complete and more inculpatory than another recording in the AGC's possession; his misconduct did not involve dishonesty; and he expressed remorse in his public apology and in representations to the AGC;
respondent has represented to the AGC that the prejudice and intemperance he evidenced during the incident at Fresh Kitchen have never been reflected in his practice of law;
respondent has represented to the AGC that in his professional dealings with clients and others he has never been the subject of a complaint alleging behavior similar to that exhibited in the Fresh Kitchen incident; and the AGC's investigation, which included speaking with his former associate and judges before whom he has appeared, substantiated this representation;
during the Fresh Kitchen incident, respondent did not identify himself as an attorney, nor was he acting in such capacity, and no client was harmed (though some terminated his services after his conduct was publicized); and
respondent repudiated his conduct as indefensible at his examination before the AGC; the publicity accruing to the incident has harmed him professionally, socially, and even in his familial relations; and he rejects and repudiates any notion that an individual's race or national origin controls or limits [*4]their worth or right to equal protection under the law.
The parties agree that the appropriate sanction is a public censure, urging that "[a] public censure would speak loudly and clearly that [respondent's] conduct was utterly unacceptable." We agree, finding that the imposition of a public censure under these circumstances is in accord with precedent (see e.g. Matter of Wilens & Baker, 9 AD3d 213 [1st Dept 2004]; Matter of Hayes, 7 AD3d 108 [1st Dept 2004]; Matter of Schiff, 190 AD2d 293 [1st Dept 1993]; Matter of Golub, 190 AD2d 110 [1st Dept 1993]; Matter of Kavanagh, 189 AD2d 521 [1st Dept 1993]; Matter of McDonald, 241 AD2d 255 [2d Dept 1998]).
In his cross motion, respondent requests that we seal the two audio-visual recordings of the Fresh Kitchen incident that he provided to the AGC as part of his cooperation with the AGC's investigation. Those recordings are attached as Exhibit A to the Petition of Charges. Respondent avers that the publicity accruing to the subject incident has already resulted in threats to his safety, among other deleterious consequences, while the recordings in question are merely cumulative evidence of the relevant events, which have already been well-publicized through, inter alia, the aforementioned widely disseminated "viral" video. Respondent further urges that the sanction of public censure sufficiently serves the purpose of apprising the public of the details of his misconduct, and that his safety and "salvageable professional reputation" should not be further jeopardized through the release of the inculpatory recordings that he voluntarily provided to AGC in the course of his cooperation with the latter's investigation. The AGC takes no position on the cross motion.
Under the circumstances, and particularly in view of the threats against respondent that are documented on the record, we find it appropriate to grant respondent's cross motion to seal the recording of the subject incident that respondent provided to the AGC and that the AGC has placed in the record (see Judiciary Law § 4).
Accordingly, the parties' joint motion for discipline by consent should be granted, respondent is publicly censured, the AGC's Petition of Charges should be denied as moot, and the cross motion should be granted to the extent of sealing the two audio-visual recordings attached as Exhibit A to the Petition of Charges.
All concur.
It is Ordered that the parties' joint motion pursuant to 22 NYCRR 1240.8(a)(5) for discipline by consent is granted, and
It is further Ordered that respondent, Aaron M. Schlossberg, is publicly censured for his misconduct, and
It is further Ordered that the Committee's Petition of Charges is denied as moot,
and,
It is further Ordered that the cross motion is granted to the extent of sealing the two audio-visual recordings attached as Exhibit A to the Petition of Charges.
Entered. [December 22, 2020]